[No. A047438. First Dist., Div. Two. Dec. 13, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID L. HARRIS, Defendant and Appellant.

142

**COUNSEL**

Arthur C. Lipton, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SMITH, Acting P. J.**—David L. Harris appeals from a judgment imposing a middle term of two years in state prison for his possessing cocaine (Health & Saf. Code, § 11350, subd. (a)), following revocation of probation previously granted for that offense. We disagree with his contention that the court violated rule 435(b)(1) of the California Rules of Court (hereafter all references to rules are cited by rule only) in selecting the sentence and, accordingly, affirm.

## BACKGROUND

In a negotiated disposition of a two-count complaint, Harris pled guilty in May 1987 to possessing cocaine (count I), and the court struck an enhancing allegation that the offense was committed while on bail (count II, Pen. Code, § 12022.1). Imposition of sentence was suspended, and he was placed on probation with conditions, among others, that he serve 60 days in county jail and enter the Sheriff's Work Alternative Program (SWAP). Harris had been found asleep, at a restaurant table, in a drug-induced stupor. The probation report recommended probation, citing an insignificant prior juvenile record and early acknowledgement of wrongdoing (rules 423(b)(1), 423(b)(3)) as mitigating factors. None in aggravation were noted.

Harris failed to report to the probation department or enter SWAP and was arrested three times in the next two months. A June 12 search following an arrest for trying to provoke a fight and taking an athletic bag uncovered rock cocaine in his pocket. Police responding to a housing project apartment on July 8 found him smoking cocaine; arrests of him and six others in the apartment yielded drugs, paraphernalia, sales lists and numerous weapons. Then, while in custody on the latter arrest, he was arrested for battery on an inmate.

The district attorney moved to revoke probation. When Harris failed to appear for a June 23 hearing on the motion, probation was summarily revoked and a bench warrant issued. He appeared with counsel two weeks later. A hearing was set, and a supplemental probation report was ordered.

On September 4, in a second negotiated disposition, Harris admitted violating probation, and it was reinstated on the original terms and conditions, modified to add one year in county jail. (The supplemental report had recommended continued revocation.)

On April 28, 1988, the district attorney again moved to revoke, this time based on recently filed charges that Harris possessed cocaine for sale

(Health & Saf. Code, § 11351.5). As before, probation was summarily revoked when Harris failed to appear, and a bench warrant issued. He was apprehended over 10 months later and appeared with counsel in late July 1989. A hearing on continued revocation was set and a further supplemental probation report ordered.

After a contested hearing held on September 27, 1989, the court found probation violated based on simple possession. Briefly, the facts showed that one afternoon in April 1988, Harris tossed several pieces of what proved to be rock cocaine to the ground when an officer approached him on the street for drinking in public. Fourteen more rocks were found in a plastic bag in one coat pocket, and a bag containing crushed rocks in another, upon a search incident to arrest. He also had $450 cash in his pants pockets.

Harris was sentenced on September 29 to a middle term of 2 years in state prison, less credits of 527 days, the court rejecting defense counsel's request for a mitigated term of 16 months. Harris appeals, claiming error in selecting the middle rather than the mitigated term.[1]

## APPEAL

■■■ Harris argued below, in favor of a mitigated term, that the court was constrained by rule 435(b)(1) to consider only those circumstances existing at the time of the original grant of probation, in May 1987, in imposing the prison term. The court took a different view, on these facts, holding that circumstances between then and the negotiated *reinstatement and modification* of probation in September 1987 could be considered. Accordingly, the court did not confine itself to the mitigating factors identified in May 1987 (insignificant juvenile record and early acknowledgement of wrongdoing). It relied as well on the fact that Harris's *initial* grant of probation had been ineffectual (rule 421(b)(5) [unsatisfactory prior performance on probation]), citing also the bench warrant which had to issue for his nonappearance at that time.[2]

---

[1] There is little reason to suspect, based on his habit of absconding, that Harris was granted bail pending appeal. It would thus appear that he has served the full 200 days or so remaining on his sentence by now, making the difference in prison terms academic. Nevertheless, we reach the issue he raises because the difference could affect parole dates for the current offense and "wash out" periods for future enhancements. (*People* v. *Harris* (1987) 195 Cal.App.3d 717, 720 [240 Cal.Rptr. 891].)

[2] The court announced at the September 27, 1989, hearing: "My finding is that because of the modification it's up to my discretion to sentence this defendant accordingly."

At the sentencing on September 29, after considering further authority from defense counsel, the court was unmoved, saying: "My position is that the modification now has changed everything. The modification gave this defendant another chance to be placed on probation,

Rule 435(b)(1) provides in pertinent part that, in imposing sentence after revoking probation: "If the imposition of sentence was previously suspended, the judge shall impose judgment and sentence after considering any findings previously made . . . . [¶] The length of the sentence shall be based on circumstances existing *at the time probation was granted*, and *subsequent events may not be considered* in selecting the base term . . . ." (Italics added.)

As the court below noted, case authority holds that the rule forbids consideration of postprobation-grant conduct (*People* v. *Goldberg* (1983) 148 Cal.App.3d 1160, 1163 & fn. 2 [196 Cal.Rptr. 470], and cases cited) but does not expressly resolve whether the phrase "at the time probation was granted" means only an *initial grant* as opposed to a later *reinstatement on modified terms.*[3]

We conclude that the rule allows consideration of circumstances preceding a *reinstatement* of probation. The rule bars considering events subsequent to "the time probation was granted . . . ." It does not specifically address a situation where, as here, probation is granted, revoked and then, as part of a negotiated disposition, reinstated on modified terms. However, reinstating probation on modified terms appears to be a new *grant* of probation within the meaning of the rules. Where a violation is found but proba-

and it didn't seem to have helped at all . . ."; "The court's position is that the modification and the bench warrant removes any consideration of the mitigated range."

Asked by counsel at the same hearing whether this meant that "any acts or factors after a person is placed on probation can be used at the time of sentence," the court clarified: "No, the Court didn't say that. [¶] The Court said that a modification takes it away from the situation that your position represents. [¶] . . . [¶] . . . The Court's opinion is that the modification gave this defendant another chance on probation and it didn't seem to help, and I don't think that the probationary situation for a mitigated range is proper in this case."

[3] Harris cites *People* v. *Goldberg, supra,* 148 Cal.App.3d 1160, where this division characterized the "spirit and purpose of the rule" as being "to preclude the possibility that a defendant's bad acts while on probation would influence his sentence upon revocation of probation." (Id., at p. 1163, fn. omitted.) That observation was made in the context of a sentencing court's duty to consider previously made findings, however, and did not address the question we consider here.

Though not analyzed by either party, one case has in another context interpreted the rule as envisioning an *initial* grant of probation. In *People* v. *Colley* (1980) 113 Cal.App.3d 870 [170 Cal.Rptr. 339], the defendant was granted probation, violated it, was sentenced to state prison for a middle term, had his sentence recalled (Pen. Code, § 1170, subd. (d)), had probation reinstated, violated it again and then was sentenced to an aggravated prison term based partly on his failed performance under the reinstated probation. (113 Cal.App.3d at pp. 871-872.) Finding rule 435(b)(1) breached by that reliance (113 Cal.App.3d at p. 873), the appellate court reversed, stating that any aggravating factor "could only have supported the selection of the upper term if it were predicated upon appellant's record *prior to the original grant of probation*" (p. 874). *Colley* apparently did not consider the arguments raised here.

tion is *not* revoked, rule 435(a) speaks of a possible *"continuation* on probation" (italics ours) with modified terms. By contrast, no such language is used for reinstated probation after revocation, and a court considering reinstatement surely must consider rule 414's enumeration of "[c]riteria affecting the decision to *grant* or deny probation" (italics ours). Thus, nothing in the language of the rules bars considering events predating a reinstatement of probation.

Looking to the history of rule 435(b)(1), we similarly see no bar to considering prereinstatement events. The rule was drafted in response to *In re Rodriguez* (1975) 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384] (*Rodriguez*), which held, under former sentencing law, that the Adult Authority could not use a defendant's postoffense conduct in fixing the "primary term" of an indeterminate sentence. Postoffense considerations rested within the Adult Authority's broad parole powers under that scheme. The holding hinged on perceived constitutional problems of disproportionate sentencing (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17) should events after the offense be used in the "primary term" decision. (14 Cal.3d at pp. 649, 652-653.)

It has recently been noted that *Rodriguez* has never been applied to limit the initial choice of a base term under the current, determinate sentence law and that rule 435(b)(1)'s prohibition against considering factors occurring after a *grant* of probation does not strictly apply *Rodriguez* since it allows consideration of events occurring *after the offense but before the probation grant*. (*People* v. *Gonzales* (1989) 208 Cal.App.3d 1170, 1172-1173 [256 Cal.Rptr. 669] (*Gonzales*), review den. May 31, 1989.) Surveying recent cases, moreover, *Gonzales* noted that our high court currently "does not appear to interpret *Rodriguez* as prohibiting the use of [a] defendant's conduct between commission of the offense and the time of sentencing to justify a more severe sentence." (*Id.*, at p. 1173.) *Gonzales* thus held it proper to consider a postoffense, presentence conviction in selecting an aggravated, determinate term for voluntary manslaughter, at least where the conviction helped demonstrate a pattern of violence. (*Ibid.*) The court observed that rule 435(b)(1), applying to conduct after a *probation grant*, did not prohibit that result and that no rule of court extended the principle to other sentencing contexts. (*Id.*, at p. 1172.)

We agree that *Rodriguez*, the inspiration for rule 435(b)(1), may have been partly undercut by recent Supreme Court precedent, at least in a determinate-sentence context. However, we premise our holding here on the language of the rule itself, which appears to allow viewing reinstated probation as a "grant" of probation. To the extent that constitutional concerns

underlying *Rodriguez* might compel a different result in a particular case or application, we stress that the defendant in this case has not offered any such argument. He only relies on the rule.

■ Upon finding a probation violation (admitted or otherwise), a court has three options—reinstate probation on the same terms, reinstate it on modified terms, or terminate it and order a commitment to prison. (*People* v. *Pennington* (1989) 213 Cal.App.3d 173, 176 [261 Cal.Rptr. 476]; Pen. Code, § 1203.2; rules 435(a) and 435(b)(1).) ■ We hold that when a court reinstates probation under the circumstances present here, a later sentence upon revocation of the reinstated probation may take into account events occurring between the original grant and the reinstatement.

To hold otherwise would seriously impede a court's flexibility to deal effectively with the offender who, granted the "clemency and grace" of probation in the hopes of achieving rehabilitation (*People* v. *Rodriguez* (1990) 51 Cal.3d 437, 445 [272 Cal.Rptr. 613, 795 P.2d 783]), proves unable to abide by the conditions of that liberty the first time out. Allowing an offender to fail multiple grants of probation with absolute impunity under rule 435(b)(1) would discourage a court from ever reinstating probation. That would further crowd prisons and tend to sacrifice probation's goals of supervised reform and rehabilitation (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 359 [272 Cal.Rptr. 767, 795 P.2d 1223]).

The court below did not violate rule 435(b)(1) by considering Harris's failed performance on the initial grant of probation or his absconding, since both events occurred after the initial grant of probation but prior to the reinstatement.[4]

---

[4]Harris urges, on petition for rehearing, that the court nevertheless improperly relied, at least in part, on the *second* bench warrant, which issued *after* the grant of reinstated probation. He relies on the court, having just inquired about the modification, stating: "And now we have this case. *In between* there was a bench warrant." (Italics ours.) Assuming for argument's sake that this ambiguity is enough to demonstrate error, no prejudice appears. The record overall shows concern that the initial grant of probation was unsuccessful. The supplemental probation report noted the initial grant in May 1987, Harris's failure to report or enter SWAP, his *three* arrests within the first few weeks on probation and, finally, his stipulated violation and reinstatement on modified terms. It is not reasonably probable that any improper consideration of the postmodification bench warrant affected the court's selection of a middle term. (Cal. Const., art. VI, § 13.)

## DISPOSITION

The judgment is affirmed.

Benson, J., and Peterson, J., concurred.

A petition for a rehearing was denied January 9, 1991, and appellant's petition for review by the Supreme Court was denied March 13, 1991.