[No. E046128. Fourth Dist., Div. Two. July 31, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
IRIS LEE BLACK, Defendant and Appellant.

COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Chandra E. Appell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RAMIREZ, P. J.**—Defendant and appellant Iris Lee Black appeals following revocation and termination of her probation. She contends the trial court erred when it relied on her poor performance on probation to justify imposing an aggravated term of three years for her offense of identity theft. (Pen. Code, § 530.5, subd. (a).)[1] Defendant also argues her waiver of conduct credits under section 4019 was not knowing and intelligent, and the court erroneously imposed a $200 restitution fine under section 1202.4, subdivision (b).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant obtained the victim's bank account information and used it to make six separate purchases totaling $377.99. Defendant admitted the offense when questioned by police. Pursuant to a written plea agreement, defendant pled guilty on May 18, 2005, to one count of identity theft. (§ 530.5, subd. (a).) On June 15, 2005, defendant was granted three years' supervised probation, subject to various terms and conditions, including 90 days in jail.

A petition to revoke defendant's probation was filed on July 20, 2006, alleging she failed to report as required for drug testing and no longer lived at her address of record. The court ordered defendant remanded into custody. On August 16, 2006, defendant admitted violating the conditions of her probation. Probation was continued on modified terms, including additional jail time and participation in a drug rehabilitation program.

A second petition to revoke probation was filed July 24, 2007, alleging defendant was no longer living at her residence address and had not reported as required. Defendant admitted the violations, indicated she had relapsed into drug use, wanted to apply for drug court, and hoped to participate in a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

structured drug rehabilitation program. The court revoked defendant's probation on July 26, 2007. Defendant then applied to participate in a drug court rehabilitation program. She was released from custody to a drug rehabilitation facility on September 24, 2007.

On January 7, 2008, the court reinstated probation on modified terms, including participation in the drug court rehabilitation program and residential treatment as directed by the probation officer. Probation was extended to expire on June 14, 2010. The record indicates defendant participated in the drug court program from January 14, 2008, through May 12, 2008.

On June 2, 2008, the case was referred to the probation office for a supplemental report. The supplemental report indicates the probation department conducted a compliance check of defendant's residence on May 23, 2008. The report alleges several violations of the conditions of defendant's probation stemming from the compliance check, including possession of methamphetamine and credit cards. The probation officer recommended defendant be sentenced to the middle term of two years in state prison. On June 30, 2008, the trial court held a hearing on the allegations in the supplemental probation report, found the allegations to be true, and sentenced defendant to the aggravated term of three years in state prison.

## DISCUSSION

### *Aggravated Prison Term*

Citing rule 4.435(b)(1) of the California Rules of Court, defendant contends the trial court erroneously imposed the aggravated prison term after revoking and terminating her probation. In pertinent part, rule 4.435(b)(1) states as follows: "On revocation and termination of probation . . . when the sentencing judge determines that the defendant will be committed to prison: [¶] . . . [¶] *The length of the sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term.*" (Italics added.) According to defendant, the circumstances existing at the time probation was granted did not support an aggravated prison term because she had no prior record, and the probation report listed only mitigating and no aggravating factors. Then, at the final sentencing hearing on June 30, 2008, after her probation was terminated, defendant believes the trial court improperly relied on her poor performance on probation as the sole reason for imposing the aggravated term.

During the final sentencing hearing on June 30, 2008, the trial court said to defendant, "[Y]ou understand that I indicated to you when you first came to court that if you were violated, you would be sentenced to the aggravated term. . . . [¶] When you were on regular supervised probation, you admitted your first violation. Thereafter you were given drug court. And on 9-24-07, you were enrolled to complete the . . . in-patient program. And since that time, you violated terms 3 and 17. . . . [O]n 5-23 deputies . . . conducted a probation compliance check at your residence and found five credit cards in your name and found approximately three ounces of methamphetamine hidden in a can. [¶] Also, on 5-23-08 you failed to inform probation that deputies found methamphetamine at your residence. And on 5-27 you admitted to the probation officer . . . that you knew about the methamphetamine and the drug sales were going on. You also admitted to the probation officer . . . that you were receiving money from the sales of methamphetamine . . . . [¶] So the Court finds that the . . . aggravated term is appropriate in this matter for . . . violating terms of probation. . . . You're sentenced to the California state prison . . . for a period of three years, the aggravated term."

In response, defense counsel asked to be heard and stated as follows: "It is my position that the probation report, which recommends the midterm, should be followed, and it should be a sentence of two years. The original probation report does not list factors in aggravation that would justify an aggravated term, so I believe the probation report should be followed in that regard."

To support her argument that the aggravated term violates California Rules of Court, rule 4.435(b)(1), defendant cites *People v. Colley* (1980) 113 Cal.App.3d 870 [170 Cal.Rptr. 339]. The defendant in *Colley* was found to be in violation of probation and sentenced to the middle term for burglary. However, the sentence was recalled under former section 1170, subdivision (d), and the defendant was placed on probation. (*Colley*, at pp. 871–872.) When probation was revoked, the trial court, expressing exasperation with the defendant's failure to live up to the grant of leniency, sentenced him to the upper term on the burglary conviction. (*Id.* at p. 872.) On appeal, the appellate court concluded the aggravated term was improperly based on the defendant's performance on probation in violation of former rule 435(b)(1) of the California Rules of Court, now renumbered rule 4.435(b)(1). (*Colley*, at p. 873.) As a result, the Court of Appeal modified the sentence from the upper to the middle term. (*Id.* at p. 874.)

■ As defendant acknowledges, the appellate court in *People v. Harris* (1990) 226 Cal.App.3d 141 [276 Cal.Rptr. 41] reached a conclusion that undermines her argument. *Harris* essentially sets forth an exception to California Rules of Court, rule 4.435(b)(1), based on a factual scenario that

was not at issue in *Colley* and is more closely analogous to the facts at issue in this case. After the original grant of probation, the defendant in *Harris* had his probation revoked and then reinstated. (*Harris*, at pp. 143–144.) Citing California Rules of Court, former rule 435(b)(1), the defendant argued that the court could consider only those circumstances existing at the time probation was originally granted. The Court of Appeal disagreed and concluded that "a later sentence upon revocation of the reinstated probation may take into account events occurring between the original grant and the reinstatement." (*Harris*, at p. 147.) "To hold otherwise would seriously impede a court's flexibility to deal effectively with the offender who, granted the 'clemency and grace' of probation in the hopes of achieving rehabilitation [citation], proves unable to abide by the conditions of that liberty the first time out. Allowing an offender to fail multiple grants of probation with absolute impunity under rule [4.435(b)(1)] would discourage a court from ever reinstating probation." (*Ibid.*)

■ Defendant argues *Harris* was wrongly decided and urges us to reject it and to apply California Rules of Court, rule 4.435(b)(1), as interpreted by *Colley*. However, as noted above, the court in *Colley* did not consider the circumstances at issue in this case because there was no reinstatement of probation followed by another revocation. " ' "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." ' " (*People v. Knoller* (2007) 41 Cal.4th 139, 154–155 [59 Cal.Rptr.3d 157, 158 P.3d 731].) In addition, the *Harris* decision has been good law since 1990. It is well reasoned, persuasive, and directly responsive to the issues raised in defendant's appeal. We therefore have no reason to reject the holding in *Harris*.

■ Based on *Harris*, the trial court was entitled to consider defendant's performance on probation from the time it was originally granted on June 15, 2005, until it was reinstated for the final time on January 7, 2008. As defendant contends, the record indicates the court did consider her conduct during this time period when it imposed the aggravated prison term on June 30, 2008.

Defendant also contends the aggravated term is erroneous even if we follow *Harris* because the record shows the trial court also considered her performance on probation after the final reinstatement of her probation on January 7, 2008. The record is somewhat unclear on this point. However, a remand is not necessary even if the court did rely in part on the more recent

probation violations on May 23, 2008, to justify the aggravated term. " 'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper. [Citation.]' " (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1325 [58 Cal.Rptr.3d 18].)

We have found nothing in the record indicating there is a reasonable probability the court would have chosen a lesser sentence had it recognized it was precluded by California Rules of Court, rule 4.435(b)(1), from considering defendant's performance during the relatively brief time period after the final reinstatement of probation on January 7, 2008, until probation was revoked for the last time on June 30, 2008. During the final sentencing hearing on June 30, 2008, the court commented that it had previously warned defendant she would receive the aggravated term if she again violated the conditions of her probation. This indicates the court was strongly in favor of the aggravated term even before the new violations were uncovered on May 23, 2008. The record confirms defendant was given several generous opportunities over an extended period of time between June 15, 2005, when probation was initially granted, and the final reinstatement of probation on January 7, 2008, to address her substance abuse problem, to cooperate with the probation department, and to comply with the terms of her probation.

### *Section 4019 Credits*

On September 24, 2007, defendant executed a "Drug Court Application and Agreement" (the Agreement), which states in part as follows: "9. If I am accepted into the DRUG COURT TREATMENT PROGRAM, I agree to the following: [¶] . . . [¶] (f) I also waive all [section] 4019 credits as a condition of participating in the DRUG COURT TREATMENT PROGRAM." Defendant placed her initials next to this paragraph and signed the Agreement. The Agreement is also signed by defendant's attorney, the prosecutor, and the court. Defendant now contends her waiver of section 4019 credits was not knowing and intelligent because her attorney did not discuss the implications of paragraph 9 with her before she entered into the Agreement and the court did not admonish her on the record.

Defendant also argues the record indicates she was misadvised by her attorney as to the scope of the waiver. To support this contention, defendant cites statements made by her attorney during her final sentencing hearing on June 30, 2008. Counsel stated in part as follows: "It's also my position that

she should be given 4019 credits of 168. [¶] . . . [¶] Four hundred twenty-nine actual is what they have down. They've indicated 168 days of 4019 credits, but they indicate that—their recommendation is that should not be awarded. [¶] . . . [¶] It's my contention that the waiver applies to sanction issues while they are on probation. Once they've been terminated from the program, that they should be awarded 4019 credits." In other words, counsel's argument was that the waiver of section 4019 credits was only applicable while defendant was on probation, and she could recapture those credits and apply them against a subsequently imposed prison sentence in the event her probation was terminated.

■  The trial court appropriately rejected counsel's argument on the scope of the waiver. It is well established that a knowing and intelligent waiver of custody credits "is a waiver of such credits for all purposes" and "such waived credits may not be recaptured and applied against a subsequently imposed prison sentence in the event probation is revoked and a prison term imposed due to the defendant's own unlawful or unsatisfactory conduct while on probation." (*People v. Jeffrey* (2004) 33 Cal.4th 312, 317 [14 Cal.Rptr.3d 852, 92 P.3d 345].) "[O]n an otherwise silent record, the waiver of credits must be presumed to be . . . for all purposes." (*Id.* at p. 320.)

■  Preliminarily, we must reject defendant's allegations she was not adequately advised by her counsel in connection with the waiver of her right to receive credits pursuant to section 4019. " 'If a defendant is told by his counsel that his waiver will not affect future prison time, but counsel neglects to inform the court of this aspect of the waiver . . . the defendant may seek relief by claiming ineffective assistance of counsel.' " (*People v. Arnold* (2004) 33 Cal.4th 294, 307 [14 Cal.Rptr.3d 840, 92 P.3d 335].)  ■  To prevail on a claim of ineffective assistance of counsel, a defendant must be able to show deficient performance by counsel and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 104 S.Ct. 2052].) However, a defendant's "bare assertion" of incompetent advice by counsel is not enough to establish deficient performance. (*People v. Barella* (1999) 20 Cal.4th 261, 272 [84 Cal.Rptr.2d 248, 975 P.2d 37].) Rather, such a claim raises matters outside the record on appeal and should therefore be resolved in a habeas corpus proceeding where evidence outside the record can be submitted in support of the claim. (*Ibid.*)

Contrary to defendant's argument, the statements made by her counsel during the sentencing hearing on June 30, 2008, were merely argument and are no indication of what advice counsel gave defendant while the Agreement

was being negotiated. The record does not include any other evidence establishing what advice defendant was given by counsel prior to entering into the Agreement. Defendant is therefore unable to meet her burden of showing counsel's performance was constitutionally deficient. We must therefore reject defendant's ineffective assistance of counsel claim.

■ Section 2900.5, subdivision (a), states that "all days of custody," including days spent in jail as a condition of probation and days credited pursuant to section 4019, "shall be credited upon [the defendant's] term of imprisonment." Under section 4019, a defendant or pretrial detainee confined in local custody may be eligible to earn credits for good conduct from the date of arrest and prior to the imposition of sentence for a felony conviction at the rate of two additional days for every four of actual custody. (§ 4019, subds. (a), (b), (f).) The sentencing court is responsible for calculating the number of days the defendant has been in custody before sentencing and for reflecting the total credits allowed on the abstract of judgment. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30–31 [108 Cal.Rptr.2d 625, 25 P.3d 1103].)

■ "As with the waiver of any significant right by a criminal defendant, a defendant's waiver of entitlement to section 2900.5 custody credits must, of course, be knowing and intelligent." (*People v. Johnson* (2002) 28 Cal.4th 1050, 1055 [123 Cal.Rptr.2d 700, 51 P.3d 913].) "The gravamen of whether such a waiver is knowing and intelligent is whether the defendant understood he was relinquishing or giving up custody credits to which he was otherwise entitled under section 2900.5." (*People v. Arnold, supra*, 33 Cal.4th at p. 308.) "The better practice is for sentencing courts to expressly admonish defendants who waive custody credits [citation], that such waivers will apply to any future prison term should probation ultimately be revoked and a state prison sentence imposed. [Citations.] A sentencing court's failure to include such an explicit advisement will not, however, invalidate a . . . waiver by which the defendant is otherwise found to have knowingly and intelligently relinquished his or her right to custody credits under section 2900.5." (*Id.* at p. 309.)

In our view, the record simply does not support defendant's claim that her waiver of section 4019 credits was not knowing and intelligent. She not only signed the Agreement and initialed paragraph 9, she also initialed paragraph 15 of the Agreement. Paragraph 15 states as follows: "I can read and understand English. I have had sufficient time to read the above statement of rights and the Agreement. I have placed my initials in each box to the left of each paragraph of this Agreement to signify that I understand and adopt as

my own, the statements, which correspond to those lines." During the hearing held the same date she signed the Agreement, the court asked defendant whether she had any questions, and defendant replied, "No." Under these circumstances, there is no reason for us to conclude defendant was not fully aware she was giving up her right to credits she previously accrued under section 4019 in order to participate in the drug court rehabilitation program.

The People's position is that the waiver applies to all section 4019 credits accrued prior to September 24, 2007, the date defendant signed the Agreement. The People concede defendant should have been awarded section 4019 credits for any time spent in custody after September 24, 2007, and a limited remand for a proper calculation of credits is therefore appropriate. On the record before us, we cannot detect a basis for disagreeing with the People's position.

### *Restitution*

Defendant contends the trial court imposed a $200 restitution fine under section 1202.4 on June 15, 2005, when she was granted probation, and another $200 restitution fine under section 1202.4 on June 30, 2008, when she was sentenced to prison. She argues this was error because section 1202.4 only provides for a single restitution fine per case, so one of the fines should be stricken.

Our review of the record revealed conflicts among the court's minutes, the abstract of judgment, and the reporter's transcripts from the relevant proceedings as to the restitution fines imposed. The reporter's transcript generally prevails when there is a conflict in the record. (*People v. Carter* (2003) 30 Cal.4th 1166, 1199 [135 Cal.Rptr.2d 553, 70 P.3d 981].) We therefore turn to the relevant statutes and the transcripts from the relevant proceedings to address defendant's contention.

Section 1202.4, subdivision (b), states as follows: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." A restitution fine imposed under section 1202.4 must not be less than $200. (§ 1202.4, subd. (b)(1).) The transcript of the hearing on June 15, 2005, when probation was granted, indicates the court imposed a $200 restitution fine pursuant to section 1202.4. This $200 fine was appropriately based on defendant's guilty plea to the offense of identity theft, and the $200 amount was recorded in the court's minutes of June 15, 2005.

Section 1202.44 states in part as follows: "In every case in which a person is convicted of a crime and . . . a sentence that includes a period of probation is imposed, the court shall . . . assess an additional probation revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." The transcript of defendant's sentencing hearing on June 30, 2008, indicates the court imposed a $200 restitution fine under section 1202.44, and this was appropriate because defendant's case included a period of probation.

Section 1202.45 states in part as follows: "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall . . . assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional parole revocation restitution fine . . . shall be suspended unless the person's parole is revoked." The transcript of defendant's sentencing hearing on June 30, 2008, indicates the court imposed "[a]n additional restitution fine pursuant to section 1202.45 in the amount of $200." The court then indicated that this fine "will be stayed pending successful completion of parole, at which time it will be permanently stayed." Section 3000 provides for a period of parole any time a defendant is sentenced to a determinate term in prison. As a result, it was also appropriate for the court to impose, but stay, a $200 restitution fine under section 1202.45.

The court's minutes for the sentencing hearing on June 30, 2008, conflict with the hearing transcript because the minutes indicate two restitution fines were imposed on this date pursuant to sections 1202.4 and 1202.45. These minutes should instead reflect two restitution fines imposed pursuant to sections 1202.44 and 1202.45. The same error was repeated in the abstract of judgment filed July 9, 2008, as it also indicates two restitution fines imposed pursuant to sections 1202.4 and 1202.45.

DISPOSITION

The case is remanded for the limited purpose of calculating conduct credits under section 4019 for time spent in local custody or in a residential drug treatment program after September 24, 2007. The Superior Court of San Bernardino County is directed to determine defendant's conduct credits earned after September 24, 2007, to amend its minutes accordingly, and to correct the abstract of judgment.

The superior court clerk is also directed to correct its minutes of June 30, 2008, and the abstract of judgment filed July 9, 2008, to reflect a $200 restitution fine imposed pursuant to section 1202.44 and a $200 probation revocation restitution fine in the amount of $200 pursuant to section 1202.45, and to forward a corrected copy of the abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

Richli, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 2009, S175466. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.