Filed 2/10/21  P. v. Argenbright CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PRESTON JAMES FRANKLIN ARGENBRIGHT,<br><br>    Defendant and Appellant. | F077716<br><br>(Super. Ct. Nos. F13909263, F15902718)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  David Andrew Gottlieb, Judge.

Nuttall Coleman & Drandall, Roger T. Nuttall and Jim H. Vorhies for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Clara M. Levers and Edrina Nazaradeh, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2014, Preston James Franklin Argenbright pled no contest to various offenses. The trial court suspended imposition of sentence and placed Argenbright on three years' probation, with one year of jail time.  In 2015, Argenbright violated probation and new charges were filed.  Again, Argenbright pled no contest.  The trial court again suspended

imposition of sentence and again placed Argenbright on three years' probation, with one year of jail time, split between six months in county jail and six months in a treatment facility. In 2017, Argenbright was again found in violation and his probation revoked. After a denial of a third grant of probation, Argenbright was sentenced to state prison.

On appeal, Argenbright contends the trial court abused its discretion in sentencing him to state prison rather than reinstating probation. He also contends the waiver of his presentence custody credits was not knowing and intelligent.

We affirm.

## FACTUAL AND PROCEDURAL HISTORY

During a violent altercation in September of 2013, Argenbright punched, verbally abused, and pinned his mother to the ground, temporarily asphyxiating her. He then struck his mother with a bed post and threatened her with a knife and "a bullet." As a result, Argenbright was charged with five felony counts in case No. F13909263 (case No. 1): assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] with a serious felony enhancement (§§ 667, 1192.7), false imprisonment with violence (§ 236), assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)), assault with a deadly weapon (§ 245, subd. (a)(1)), and making criminal threats (§ 422), all felony counts.

On March 13, 2014, the trial court granted the prosecution's motion to amend one of the assault counts to allege an enhancement for great bodily injury (§ 12022.7, subd. (a)). Argenbright then pled no contest to that count and admitted the great bodily injury enhancement, and the trial court dismissed the remaining counts.

On April 11, 2014, the trial court suspended imposition of sentence and placed Argenbright on three years' probation. The trial court imposed 365 days in jail, and then a term of formal probation lasting 36 months. Argenbright was credited with 388 days for time served; fines and fees were imposed.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

On May 1, 2015, Argenbright's probation in case No. 1 was revoked based on new charges filed April 30, 2015. After a violent altercation between Argenbright and a confidential victim (CV), in which Argenbright forced the CV to snort cocaine, threatened her with death, placed her in a chokehold, punched her and kicked her in her upper body, Argenbright was charged in case No. F15902718 (case No. 2) with corporal injury to a cohabitant (§ 273.5, subd. (f)(1)), making criminal threats (§ 422), and assault with a deadly weapon (§ 245, subd. (a)(1)), with the added allegation of a prior conviction (case No. 1) for a serious felony (§§ 667, subd. (b), 1170.12, subd. (a)).

At a January 12, 2016, hearing the trial court granted Argenbright's request to be released to the Crosby Center, a mental health facility, for a 30-day evaluation. A month later, Argenbright moved for a 30-day continuance of the status conference to permit additional testing at the Crosby Center. The court granted the request over the People's objection.

On May 5, 2016, Argenbright pled no contest to corporal injury in case No. 2, and the other two counts were dismissed. Due to the plea, the trial court found Argenbright in violation of his probation in case No. 1. As a condition of the negotiated settlement, Argenbright waived "time credits for all purposes."

At sentencing on June 14, 2016, Argenbright's probation in case No. 1 was extended by one year and a one-year term in county jail imposed. On that same day Argenbright was sentenced in case No. 2. The trial court granted Argenbright's *Romero*[2] motion, a one-year jail term was imposed, and he was placed on three years' probation. The one-year confinement was split into six months in county jail and six months at the Crosby Center.

---

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

On July 19, 2016, Argenbright filed a motion for hearing "TO ENSURE MEDICATIONS AND TREATMENT ARE BEING PROPERLY ADMINISTERED" (boldface omitted) by the county jail.  The motion was denied.

On September 30, 2016, Argenbright's motion for early release to attend the Crosby Center was granted over the People's opposition.  On October 11, 2016, custody of Argenbright was transferred from the jail to the Crosby Center.  While there, he was required to refrain, among other conditions, from violence and from using illegal drugs.

On February 22, 2017, Argenbright tested positive for methamphetamine.  On March 6, 2017, the director of the Crosby Center e-mailed Argenbright's probation officer to report that Argenbright had assaulted two patients at the facility and Argenbright's aggressive behavior had caused the director to fear for his life and the safety of his employees and patients.  The director also reported that Argenbright frequently refused his required medication.

Argenbright denied all allegations that he had violated the conditions of probation.  On March 10, 2017, Argenbright's probation was revoked, and he was returned to the county jail.

Over a year later, on May 3, 2018, following a contested probation violation hearing, the trial court denied a third grant of probation and sentenced Argenbright to two years in prison in case No. 1, with an additional three years for the great bodily injury enhancement, for a total of five years.  Argenbright was credited with 816 days of work time credits (§ 2933.1).  In case No. 2, Argenbright was sentenced to four years, and credited with 1694 days of work performance and good behavior credits (§ 4019).  The sentence in case No. 2 was ordered to be served concurrently with the sentence in case No. 1.

## DISCUSSION

I.   DID THE TRIAL COURT ABUSE ITS DISCRETION IN SENTENCING ARGENBRIGHT TO PRISON?

Argenbright contends the trial court abused its discretion in denying him a third opportunity at probation because the trial court had a "reasonable and humane alternative in terms of reinstating probation, with placement in a suitable treatment facility" rather than sentence him to prison. We find no abuse of discretion on the part of the trial court.

*Procedural History*

Prior to January 2016, probation officials and the trial court operated under the assumption that Argenbright was not suffering from a mental illness. The probation report from case No.1 stated Argenbright reported no mental health issues. The probation report from case No. 2 contains no mention of any mental illness. The first record of a mental illness diagnosis was in a letter from the Crosby Center, a mental health treatment facility, dated June 12, 2016, which was the basis for Argenbright's second grant of probation. Earlier, on January 12, 2016, Argenbright asked the trial court to be released to the Crosby Center, a treatment center selected by Argenbright's mother, for a 30-day evaluation. The evaluation was extended, over the People's objection, by 30 days per Argenbright's request on February 23, 2016. The Crosby Center diagnosed Argenbright with post-traumatic stress disorder, major depressive disorder, intermittent explosive disorder, and a traumatic brain injury.

Argenbright returned to jail on March 15, 2016, and on May 5, 2016, pled no contest to one count in case No. 2, and probation was granted in that case. Probation was also reinstated in case No. 1. The plea agreement was that Argenbright spend six months in jail and the second six months in the Crosby Center.

In discussing the agreement, the trial court emphasized to Argenbright that if he "ever violated the terms and conditions" of his probation, which the trial court granted after lengthy discussion on the information presented by the Crosby Center, Argenbright

5.

would go to state prison and there would be "no if, ands, or buts about it." Argenbright stated that he understood. The trial court went on to state that any further grant of probation would have to involve "extraordinary circumstances," and the trial court discussed the risk of greater time in custody should Argenbright violate this probation. The trial court explained that, "should there be a case where you end up drinking, using drugs, whatever it is, and hurting somebody very badly, it would be reflective on this Court of … taking that extraordinary risk on somebody who has already committed two very violent offenses." Argenbright stated that he understood.

After time in the county jail, Argenbright was transferred to the Crosby Center on October 11, 2016, where he was required to refrain from all violence other than in self-defense, and from using illegal drugs.

On February 22, 2017, Argenbright tested positive for methamphetamine. A few weeks later, in March of 2017, the director of the Crosby Center contacted Argenbright's probation officers to inform them that Argenbright had assaulted two patients, and his aggressive behavior had caused the director to fear for his life and the safety of his employees and patients. The director also reported that Argenbright frequently refused to take his prescribed medication.

Argenbright's probation was revoked on March 10, 2017, and he was returned to the jail. Argenbright denied the allegations that he was terminated from the Crosby Center for striking another patient and testing positive for methamphetamine.

A contested probation violation hearing was held April 12 and 13, 2018. Argenbright was found in violation and his probation revoked. At the hearing, a forensic psychologist testified about the appropriateness of the Crosby Center for Argenbright (which he stated was not adequate for his needs), the treatment provided at the jail was more beneficial, and other treatment options available.

6.

*Sentencing*

At sentencing on May 3, 2018, defense counsel argued against sentencing Argenbright to prison, stating that the Crosby Center was "not a good match" for Argenbright, but that he had done well in the treatment he had received at the jail.

The trial court refused to place the blame on the Crosby Center and stated that the "difference" between others in treatment programs and Argenbright was that "they don't continue to use controlled substances, they take their medications as they are directed to do, and they don't get involved in assaultive behavior."

The trial court then declined to reinstate probation and sentenced Argenbright to prison. In doing so, the trial court spoke to Argenbright directly, stating that case No. 1 was an "extraordinarily serious case," and he had been granted probation. However, "[s]hortly thereafter, within a relatively short period of time," Argenbright committed a new offense, which was "extraordinarily serious as well." It had been through Argenbright's defense counsel, his family and others, that the trial court was convinced that, due to Argenbright's diagnoses of mental trauma, mental illness and substance abuse, he be allowed an "opportunity to try and handle these issues in an appropriate way." While the trial court acknowledged that not every treatment program works with every individual, the issue was what Argenbright "did in the program"—"continu[ing] to use controlled substances," "not taking medications as prescribed" and "continues to engage in … assaultive conduct."

For those reasons, the trial court stated that it was not "appropriate" for Argenbright to be in another program. The court noted that it had to strike the strike allegation on case No. 2 in order to even allow for probation the second time. The court stated it was not taking "any pleasure in sending anybody to state prison," but based on Argenbright's conduct in the programs, the court found it inappropriate "to continue on probation" and sentenced Argenbright to state prison.

7.

*Applicable Law and Analysis*

"Probation is not a right, but a privilege." (*People v. Bravo* (1987) 43 Cal.3d 600, 608.) A trial court's determination as to whether probation is appropriate for a defendant is guided by the framework of section 1203. For instance, in case No. 1, Argenbright committed assault with a deadly weapon with a great bodily injury enhancement, meaning that probation should only be granted in "unusual cases" where probation best serves "the interests of justice." (§ 1203, subd. (e)(3).) While California Rules of Court, rule 4.413(c)(2)(B) provides that an "unusual case" may exist where a mental condition is a significant contributing factor to the crime and there is a "high likelihood" that the individual "would" respond favorably to mental health care and treatment, probation is still not a right. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.)

"A probation violation does not automatically call for revocation of probation and imprisonment. [Citation.] A court may modify, revoke, or terminate the defendant's probation upon finding the defendant has violated probation. [Citation.] The power to modify probation necessarily includes the power to reinstate probation. [Citations.] Thus, upon finding a violation of probation and revoking probation, the court has several sentencing options. [Citation.] It may reinstate probation on the same terms, reinstate probation with modified terms, or terminate probation and sentence the defendant to state prison. [Citations.] [¶] If the court decides to reinstate probation, it may order additional jail time as a sanction. [Citation.]" (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420 (*Bolian*).) If the court terminates probation, the sentence options depend on whether imposition of sentence had previously been suspended, or if sentence had been imposed but execution suspended. In the first situation, the court has full sentencing discretion; in the second situation, "upon revocation and termination of probation, the court must order that imposed sentence into effect." (*Id.* at pp. 1420–1421.)

"The decision whether to reinstate probation or terminate probation (and thus send the defendant to prison) rests within the broad discretion of the trial court." (*Bolian,*

8.

*supra,* 231 Cal.App.4th at p. 1421.) " 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action.' " (*People v. Urke* (2011) 197 Cal.App.4th 766, 773 (*Urke*); see also *People v. Butcher* (2016) 247 Cal.App.4th 310, 318.)

Here, we find no abuse of discretion on the part of the trial court in denying Argenbright a third probation. According to the director of the Crosby Center, Argenbright's psychiatric diagnoses were significant causes of his violent conduct. Argenbright argues that the Crosby Center was ineffective in helping him with these violent tendencies and he should be allowed probation and jail time instead of prison, to aid in his treatment. However, Argenbright fails to acknowledge that he repeatedly refused to comply with his treatment, both at the Crosby Center and at the jail. He was not only a violent repeat offender, but he was also violent in treatment to those working with him and attempting to treat his mental illness.

Argenbright was given another chance when the trial court granted him probation the second time. At the hearing prior to revocation of Argenbright's second probation, the director of the Crosby Center testified that he believed Argenbright was better suited for placement in a "higher level of restrictive care" than the Crosby Center could provide. As fully expressed by the trial court, Argenbright's unwillingness to cooperate in treatment did not provide the trial court much confidence as to his future ability to comply, and by extension his suitability for probation.

Argenbright has failed to show that the decision made by the trial court not to grant probation the third time was irrational or arbitrary, and we reject his claim to the contrary. (*Urke, supra,* 197 Cal.App.4th at p. 773.)

## II.   WAS ARGENBRIGHT'S WAIVER OF HIS TIME CREDITS KNOWING AND INTELLIGENT?

Argenbright also contends the trial court erred when it accepted his waiver of presence time credits, claiming the waiver was not clear, voluntary and informed. We disagree.

*Procedural Background*

On May 5, 2016, Argenbright entered a plea of no contest to one count in case No. 2, which served to violate the probation he had been granted in case No. 1. The trial court reinstated probation, with one of the conditions being that he waive "time credits for all purposes."

In discussing the "final negotiated potential settlement," the following occurred:

"THE COURT:  One of the things also that we discussed is waiving time credits. What that means is this. In the violation of probation, since you violated the terms and conditions of your probation, the Court would require you to waive your time credits for all purposes. So you have almost a year and a half of time credits. Those time credits would be gone on that case. What that means is … that should you violate probation in the future, in a year or two years or whatever else, you would not be entitled to those time credits. Now, you would be entitled to the six month time credits because I'm sentencing you on that right now.

"[ARGENBRIGHT]:  I understand.

"THE COURT:  All right. On the new case, I wouldn't touch your time credits. Okay. So whatever you've got in that, because that's a new case, there's no violations, you would have those time credits.

"[ARGENBRIGHT]:  Okay, I understand.

"THE COURT: All right. Any questions of me about anything we just discussed?

"[ARGENBRIGHT]:  No, your Honor."

The trial court then stated that it would allow Argenbright to have some discussion with counsel and emphasized that Argenbright need not accept "this deal," but that

counsel would explain the risks and benefits involved. Argenbright was cautioned to listen to counsel "very carefully."

Following a 15 to 20-minute recess, the matter was back on record. At that time, defense counsel stated that Argenbright would like to enter a no contest plea to the one count, admit the prior within case No. 1, which was a strike. Defense counsel noted that the change of plea form indicated that the People would move to dismiss counts two and three on case No. 2, and the trial court had indicated that it would strike the prior strike, as well as reinstate probation in case No. 1. Defense counsel stated, "[T]hose are on the change of plea form. The Court also indicated additional conditions, such as waiving time credits. And if we can do that orally, we'll do that and I'll submit that."

The prosecutor then stated that she had "calculated actual time as to today" on case No. 1, as "455 days" and for probation "454" days. The trial court calculated a total of 909 days, "455 actual, and 454 good/time work time." The trial court then stated Argenbright "would need to waive all those time credits."

The trial court then addressed Argenbright, stating:

"[Y]ou've heard what's been said on the record in regards to your case, not only in this session but in the previous session when I went through the plea agreement with you, and I went through all the terms and conditions, the necessity for the Court to exercise extraordinary discretion. You've had time to go through that with your attorney. [¶] And you understand everything that's been discussed in regards to your case?"

Argenbright stated he had. He also agreed that he had placed his initials and signatures on the plea form, no one had made promises to him or threats against him in connection with the plea, and he had had enough time to discuss the case with defense counsel.

The trial court then went through various consequences of the plea Argenbright needed to "understand." Following Argenbright's responses, the trial court accepted the plea.

The trial court then addressed case No. 1, finding that Argenbright had violated the terms and conditions of his probation. In addressing case No. 1, the trial court

11.

addressed Argenbright stating, "Sir, in that matter you have a total time credits in the amount of 909 days, 455 actual and 454 good time/work time credits. [¶] Do you waive those time credits for all purposes?" Argenbright responded, "Yes, your honor." The trial court then found "a knowing, intelligent and voluntary waiver of those time credits."

*Applicable Law and Analysis*

A defendant committed to state prison is ordinarily entitled to credit against the prison term for all days spent in custody prior to sentencing, including days spent in jail or in a residential drug treatment program as a condition of probation. (§ 2900.5; *People v. Jeffrey* (2004) 33 Cal.4th 312, 315 (*Jeffrey*); *People v. Johnson* (2002) 28 Cal.4th 1050, 1053.) A defendant is also entitled to good time/work time credit. (§ 4019.) "A sentence that fails to award legally mandated custody credit is unauthorized." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

"A prisoner may waive presentence credits, including conduct credits, as part of a negotiated disposition." (*People v. Lara* (2012) 54 Cal.4th 896, 903, fn. 3.) Like other statutory rights, the right to receive presentence credits may be expressly waived "as long as the defendant's waiver is 'knowing and intelligent' in the sense that it was made with awareness of its consequences." (*People v. Thurman* (2005) 125 Cal.App.4th 1453, 1460; see also *People v. Black* (2009) 176 Cal.App.4th 145, 154 (*Black*) [waiver of section 4019 credits].) A knowing and intelligent waiver of credits bars any future use of those credits to reduce a prison term in the event probation is terminated and a prison sentence imposed. (*Jeffrey, supra,* 33 Cal.4th at pp. 316–317; *People v. Arnold* (2004) 33 Cal.4th 294, 308–309 (*Arnold*).) " 'The gravamen of whether such a waiver is knowing and intelligent is whether the defendant understood he was relinquishing or giving up custody credits to which he was otherwise entitled .…' " (*Black, supra,* at p. 154.) In other words, a defendant's waiver of credits "must be clear, voluntary, and informed." (*People v. Eastman* (1993) 13 Cal.App.4th 668, 678.)

12.

Argenbright contends that the only clear, voluntary and informed waiver of his time credits was at the end of the first discussion where the trial court laid out the terms of the negotiated settlement and specifically told him he would be required to waive almost "a year and a half" of time credits, which Argenbright describes as "[n]ot actual time, but time credits." As argued by Argenbright, at the time of the admission, he was entitled to 909 days of time credits, which is almost three years. He argues that the "almost year and a half," the trial court amount originally referred to, and which he knowingly agreed to, reflected approximately his actual time served, not the time credits he was entitled to. Argenbright acknowledges that he was later advised that he would be waiving 909 days' time credits for all purposes, but "that was after the court initially told him that he would be waiving approximately one and half years of time credits." Argenbright argues that the trial court intended to but did not state that he would have to "waive almost a year-and-a-half of actual time, plus time credits," and failing to do so meant he did not knowingly and intelligently waive those credits.

In *Urke, supra,* 197 Cal.App.4th 766, on which Argenbright relies, the appellate court found no knowing and intelligent waiver of the defendant's right to custody credits under section 2900.5. In that case, in 2004, the defendant was specifically told that he *would* be entitled to credit for the 120 days he spent in the county jail in connection with a subsequent probation violation if he was then sentenced to state prison. The court in *Urke* assumed that the trial court meant to say that defendant would *not* be entitled to credit for those days. However, given that defense counsel informed the trial court that he had not explained the "*Johnson* waiver"[3] to defendant, the court could not assume that defendant understood the trial court to mean the opposite of what it stated. Nor does the record reveal that this apparent misconception was somehow cleared up by the time

---

[3]     "A *Johnson* waiver is a waiver of a statutory right to credit for time served against a subsequent county jail or prison sentence pursuant to section 2900.5." (*People v. Arnold, supra,* 33 Cal.4th at p. 307.)

13.

defendant entered his subsequent *Johnson* waiver in 2007. With respect to that waiver, defendant was merely asked if he agreed to serve an additional 210 days in the county jail. The trial court did not advise him that he was relinquishing his right to custody credit for those days. (*Urke, supra,* at p. 778.)

We find the facts in *Urke* distinguishable from those here. In *Urke*, the trial court's admonition led the defendant to believe that he would receive custody credits if he violated probation. (*Urke, supra,* 197 Cal.App.4th at p. 778.) Here, the trial court specifically told Argenbright "you would not be entitled to those time credits."

And while the trial court initially referenced the time as "almost a year and half," that amount was corrected, and the 909 days mentioned twice subsequently. Unlike the situation in *Urke*, the timing between the first reference of "almost a year and a half" and the 909 figure, was separated by a 15 to 20-minute recess, not the three years, as in *Urke.* When Argenbright entered his plea, and the trial court informed him he was waiving the "total time credits in the amount of 909 days, 455 actual and 454 good time/work time credits," and was asked again if he waived them for all purposes, Argenbright responded in the affirmative.

We find sufficient evidence to show that Argenbright knowingly and voluntarily waived credit and reject his claim to the contrary.

### DISPOSITION

The judgment is affirmed.

FRANSON, Acting P.J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

14.