Filed 2/8/24  P. v. Fitch CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081565 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1502606) |
| JUSTIN DANIEL FITCH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Mark E. Johnson, Judge.  Reversed and remanded with directions.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

In 2020, Justin Daniel Fitch was convicted of assault on a child under the age of eight resulting in a comatose state (Pen. Code § 273ab, subd. (b);[1] count 1); child abuse likely to produce great bodily injury (§ 273a, subd. (a); count 2); sexual penetration of a child age 10 or younger (§ 288.7, subd. (b); count 3); torture (§ 206, count 4); and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 5). As to count 2, it was also alleged that Fitch personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)). He received a sentence of nine years plus 29 years to life in prison.

In 2022, this Court affirmed Fitch's convictions but remanded for resentencing under the newly-amended version of section 1170, with additional directions to stay the sentence for his torture conviction on count 4 pursuant to section 654. (*People v. Fitch* (July 5, 2022, D078987 (*Fitch I*)) [nonpub. opn.].)

In 2023, the court resentenced Fitch to seven years plus 22 years to life in prison. The court calculated the sentence as follows: the middle term of four years on count 2, plus three years for the great bodily enhancement, plus consecutive indeterminate terms of seven years to life on count 1, plus 15 years to life on count 3, and a concurrent 180-day jail term on count 5. The court also imposed and stayed a seven years to life sentence on count 4. Credits were ordered "to remain as previously ordered."

Fitch now raises two issues on appeal: first, that the trial court should have calculated his actual custody credits between his original sentencing date and his resentencing date; and second, that the trial court erred by imposing sentences of "seven years to life" instead of life with the possibility of parole for his convictions on counts 1 and 4. The Attorney General argues

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

that Fitch is correct on the first issue and wrong on the second issue. We agree. We conclude that Fitch is entitled to the actual custody credits that he served between his original sentencing date and his resentencing date. We also conclude that the trial court properly included the minimum term of confinement, seven years, before Fitch is eligible for parole. Accordingly, we remand for the limited purpose of recalculating custody credits and otherwise affirm.

STATEMENT OF FACTS

In our 2022 unpublished opinion (D078987) on Fitch's direct appeal, we set forth the underlying facts of his convictions:

> On April 19, 2015, Fitch babysat Doe, the son of R.H., an old high school friend. When Fitch returned Doe to R.H., he showed her a bruise on Doe's chest, saying it must have happened the previous day, when R.H. had taken Doe to a trampoline park, or from Doe's car seat. R.H. doubted those explanations.
>
> On April 23, 2015, R.H. asked Fitch to babysit Doe from 1:00 p.m. to 4:00 p.m. and Fitch agreed. When R.H. dropped Doe off at Fitch's residence at around 12:30 p.m., Doe cried and appeared like he did not want to be with Fitch. R.H. left for work and a few minutes later, Fitch sent her a text message indicating that in "25 seconds" Doe had stopped crying. He included a photograph depicting Doe in good spirts.
>
> Approximately one hour later, Fitch sent R.H. a text message and attached a photograph of Doe with his hair in disarray, wearing no clothing, and sitting near two piles of vomit. Fitch testified that at one point Doe started moving "robotically"; therefore, Fitch dialed 911 at 2:59 p.m. But he hung up the phone, claiming he thought it better to speak to R.H. first. Fitch later informed R.H. that Doe appeared to be sick, but afterwards he informed her that Doe was fine.
>
> Fitch asked J.B., an acquaintance, to stop by his house to check on Doe. She arrived at Fitch's residence at approximately 4:00 p.m. and observed Doe on the living room couch. She advised

Fitch that Doe needed immediate hospital care. She observed that Doe was limp and having difficulty breathing when Fitch lifted him off the couch. She instructed Fitch to call 911 immediately. Fitch responded that Doe was getting better, so he was not going to take him to the hospital. At 4:18 p.m., R.H. instructed Fitch to take Doe to her aunt's house. Fitch stated he would do so shortly.

Fitch called 911 again at approximately 6:30 p.m. At around 6:40 p.m., the sheriff's department and emergency medical personnel were dispatched to appellant's house. They found Doe with lethargy, a fixed gaze, low level of consciousness, high heart rate, trouble breathing, and a fresh circular bruise on his chest. Because of Doe's poor condition, they quickly treated him at the scene and transported him to a regional medical center. Around this time, Fitch called R.H. and told her that Doe was being taken to the emergency room. He had not previously informed her about Doe's serious and deteriorating condition.

Physicians diagnosed Doe with three main groups of injuries: (1) abusive head trauma, significant brain injury and hemorrhage, retinal hemorrhages, and seizures, (2) a punctured anus, rectum and mesentery, and (3) a fresh, raised circular mark on his chest. Doe underwent surgery to repair the punctures to his rectum and mesentery. Doe was in a coma for one month. His injuries have left him developmentally-disabled physically and mentally.

On April 24, 2015, Moreno Valley Police arrested Fitch and transported him to a police station, where he tried to commit suicide and became combative and resistant. Police used a taser device to detain him. They removed his prosthetic leg and noted a circular button on the knee portion of the prosthetic leg that appeared to match a photograph of the bruises on Doe's chest.

## DISCUSSION

A.  *The Trial Court Erred in Failing to Recalculate Fitch's Post-Sentence Credits on Remand*

At Fitch's initial sentencing hearing held in January 2021, the trial court awarded him 2,424 days credit for time served, including 2,108 actual

days plus 316 days of conduct credit under section 2933.1. At the resentencing hearing in February 2023, the court did not recalculate Fitch's custody credits. The court was initially unsure if it "ha[d] to calculate the credits," but decided against it after the clerk did "some research" on the issue and "found out that you only have to do that if the remittitur said you made a mistake on credits." Thus, the abstract of judgment issued after the resentencing reflected the same actual credits as the original abstract of judgment.

Fitch had a legal right to the calculation of the actual time he spent in custody. "The sentencing court is responsible for calculating the number of days the defendant has been in custody before sentencing and for reflecting the total credits allowed on the abstract of judgment." (*People v. Black* (2009) 176 Cal.App.4th 145, 154; § 2900.1.) Therefore, the matter should be remanded to calculate all of Fitch's custody credits, and an amended abstract of judgment should be issued. (*See People v. Buckhalter* (2001) 26 Cal.4th 20, 37.)

B. *The Trial Court Properly Imposed a Term of "Seven Years to Life" on Count 1 and an Identical But Stayed Term For Count 4*

Fitch also argues that the trial court erred by sentencing him on counts 1 and 4 to a term of "seven years to life." He contends that the "correct sentence for each crime is an indeterminate term of life in prison with the possibility of parole." Seven years relates to his minimum parole eligibility, which, Fitch asserts, "is not a minimum term."

Because Fitch did not object on this ground during his sentencing hearing, this argument is forfeited. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 ["the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

5

"Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Ibid.*) Despite Fitch's argument to the contrary, this is not a situation where the sentence "could not lawfully be imposed under any circumstance in the particular case." (*Id.* at 354.) Indeed, his indeterminate life sentence was statutorily required to have a minimum term of seven years regardless of how the trial court characterized the sentence. Accordingly, Fitch's argument is forfeited.

Moreover, even if Fitch had not forfeited this argument, it would fail on the merits. While it might be more precise to describe the minimum term of confinement as the minimum parole eligibility period, it was not clearly error for the trial court to characterize it as a minimum term of imprisonment. In addition, we agree with *People v. Jefferson* (1999) 21 Cal.4th 86 (*Jefferson*), that describing the minimum parole eligibility period as a minimum prison term accurately communicates the import of Fitch's sentence in a straightforward way that may be more easily understood by those who are not criminal law specialists. (*Id.* at p. 101, fn. 3.) Accordingly, there is no error in the stated counts 1 and 4 sentence of "seven years to life."

## DISPOSITION

The order is reversed, and the matter is remanded. The trial court is directed to recalculate Fitch's actual days in custody between the original

6

sentencing and resentencing and to issue an amended abstract of judgment with the correct custody credit.  The order is otherwise affirmed.


                                              O'ROURKE, Acting P. J.

WE CONCUR:



KELETY, J.



RUBIN, J.

7