Filed 6/27/13  P. v. Meraz CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B242496 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. VA111663) |
| EDWARD MERAZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael A. Cowell, Judge.  Affirmed.

Linn Davis, under appointment by the Court of Appeal, and Edward Meraz, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant Edward Meraz appeals from a jury verdict finding him guilty of kidnapping (Pen. Code, § 207, subd. (a)[1]); attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 664, subd. (a)); assault with a deadly weapon (§ 245, subd. (a)); and conspiracy to commit murder (§ 182, subd. (a)(1)). Our independent review of the record reveals no arguable issue that would aid defendant. We affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant was convicted of crimes stemming from attacks on victim Christina M. committed in concert with Jose Ayala (Mike) and Vincent Mendoza. Christina agreed to accompany the three men, whom she knew, to the beach. Instead, she was kidnapped and driven to a remote canyon area. While in the kidnappers' car, her hands were tied and she was injected in the neck several times, causing her to feel numb, choke and gag. Once the car stopped at the canyon, she was pulled from the car and beaten. A blow to her head caused her to briefly lose consciousness. Then two of the attackers threw Christina over a cliff. The attackers followed her down, and her neck was slashed three times by Ayala. The three attackers climbed back up the hill to their car. When defendant heard Christina exclaim that she was bleeding, he told the others that Christina was still talking. Mendoza went back down the hill to Christina and stabbed her twice behind her ear. At that point, she played dead and the attackers drove away. Surprisingly, Christina survived these multiple attacks and was able to go for help. She identified the attackers and the car they used.

Samantha Montgomery testified that the three conspirators came to her house at 4:00 a.m., shortly after the attack on Christina. They gave her a bag which she threw away. The next day, she took police officers to the dumpster where she had thrown the bag. Police officers recovered the bag and a photograph of it was admitted as Exhibit 30.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

It contained a number of syringes, both used and unused, as well as gloves, and other items.

After the jury convicted him of multiple offenses, defendant filed a motion for new trial based on newly discovered evidence. It was supported by a declaration of Stephanie Crotty. She said on the night Christina was attacked, she was at codefendant Mendoza's residence and that defendant joined them later that evening. She said that Ayala and Mendoza planned to confront Christina, but that defendant did not know about this plan. She urged defendant not to accompany the other two men, but he ignored the request and left with them. Defendant submitted his own declaration stating that he told his defense attorney about Crotty several times during trial and was told that she could not be located. He argued that Crotty's evidence established that he did not act with specific intent. The trial court denied the motion, finding that defendant actively participated in the plan, even if he was initially unaware of it. Defendant was sentenced to an aggregate term of 33 years to life in state prison.

Defendant appealed. His appointed counsel found no arguable issues to raise and asked us to independently review the record on appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441–442 (*Wende*). We advised defendant that he had 30 days within which to submit any arguments he wished this court to consider. In response, he filed a supplemental brief, in which he raises a number of contentions regarding the proceedings below. We have reviewed his brief and the record on appeal in accordance with *Wende* and *People v. Kelly* (2006) 40 Cal.4th 106, 119–120.

## DISCUSSION

### I

Defendant's first contention is that his convictions should be reversed based on ineffective assistance of counsel. "Generally, a conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes *both* of the following: (1) that counsel's representation fell below an objective standard of reasonableness; *and* (2) that there is a reasonable probability that, but for counsel's

3

unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.] If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.) Defendant contends counsel was ineffective for failing to secure a defense witness. But he does not identify this person, nor does he explain how the witness would have provided testimony leading to a determination more favorable to him. We conclude defendant failed to establish either prong of an ineffective assistance of counsel claim.

## II

Defendant argues the trial court erred in denying his motion for a new trial based on the newly discovered evidence of Crotty's statements.

"A trial court may grant a new trial motion '[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial.' (§ 1181, subd. (8).) In ruling on such a motion, the trial court considers several factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citations.]' (*People v. Delgado* (1993) 5 Cal.4th 312, 328 (*Delgado*).)" (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1151 [affirming denial of new trial motion based on newly discovered evidence on ground that evidence added little to trial and would not have rendered a different result probable on retrial.].) "A new trial motion based on newly discovered evidence is looked upon with disfavor. We will only disturb a trial court's denial of such a motion if there is a clear showing of a manifest and unmistakable abuse of discretion. [Citations.]" (*Ibid.*)

Christina's testimony established defendant's active role in the crimes committed against her. Defendant was seated in the back seat of the car with Christina when she

4

was kidnapped. He grabbed her hands and tried to tie them and, with help from a codefendant, succeeded in doing so. While still in the car, he moved Christina across him so that Mendoza, who was in the front passenger seat, could stab her in the neck repeatedly with a needle to inject her from a syringe. When the car stopped at a canyon, defendant grabbed Christina by the hair so another defendant could pull her out of the car. After throwing her down the cliff, all three defendants followed. Defendant was present when one of the others slashed Christina's throat three times. The three men returned to the parked car at the top of the hill. Christina exclaimed that she was bleeding. Defendant said, "'She's still talking.'" At that point, codefendant Mendoza went back down to Christina and stabbed her twice in the neck.

Whatever defendant knew before the three men picked up Christina, he chose to become an active participant in the crimes against her, including the conspiracy to commit murder. The new evidence provided by Crotty was not sufficient to render a different result probable on retrial. (*People v. Mehserle*, *supra*, 206 Cal.App.4th at p. 1151.) We conclude the trial court did not err in denying the new trial motion.

III

Defendant argues that the prosecution violated his fundamental due process rights because it failed to disclose possible exculpatory or mitigating evidence regarding "the Chemical Analysis report of the CHEMICAL, BIOLOGICAL and/or FORENSIC TESTING, CONFIRMATORY TESTING results of the liquid that was found in the alleged syringes that was allegedly used to attack the victim in this case?[]" Defendant cites *Brady v. Maryland* (1963) 373 U.S. 83, regarding the right of a criminal defendant to present exculpatory evidence. He contends the prosecution never disclosed this evidence at trial.

Whittier police officer Mark Goodman testified to recovering the syringes, marked as trial exhibits 38 and 39. He was not questioned about analysis of the syringe contents. Chris Kraft, a forensic specialist for the Whittier Police Department, testified that he recovered the syringes from the bag discarded by Montgomery. He was not asked by

5

either the prosecutor or defense counsel whether he had analyzed any liquid in or on them. No defense objection to his testimony on discovery grounds was raised.

"'The federal due process clause prohibits the prosecution from suppressing evidence materially favorable to the accused. The duty of disclosure exists regardless of good or bad faith, and regardless of whether the defense has requested the materials. [Citations.] The obligation is not limited to evidence the prosecutor's office itself actually knows or possesses, but includes "evidence known to the others acting on the government's behalf in the case, including the police." [Citation.] [¶] For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness. [Citations.] Evidence is material if there is a reasonable probability its disclosure would have altered the trial result. [Citation.] Materiality includes consideration of the effect of the nondisclosure on defense investigations and trial strategies. [Citations.] Because a constitutional violation occurs only if the suppressed evidence was material by these standards, a finding that *Brady* was not satisfied is reversible without need for further harmless-error review. [Citation.]' [Citation.]" (*People v. Whalen* (2013) 56 Cal.4th 1, 64.)

Here, defendant has not met his burden of showing that the evidence to which he refers was either favorable or material. While the syringes used in the attack on Christina were recovered and entered into evidence at trial, there was no testimony that the liquid on and in some of them was analyzed. No reference to a forensic report was made by any witness. Under these circumstances, we find no due process violation because defendant did not demonstrate that an analysis of the contents of the syringes would have altered the trial result.

Defendant's argument also implicates the duty of law enforcement agencies, "under the due process clause of the Fourteenth Amendment, to preserve evidence 'that might be expected to play a significant role in the suspect's defense." (*California v. Trombetta* (1984) 467 U.S. 479, 488; [citation].)'" (*People v. Carter* (2005) 36 Cal.4th 1215, 1246.) Where a defendant argues the State failed to preserve evidentiary material which could have been subjected to tests, the results of which might have exonerated the

6

defendant, no denial of due process is established unless a criminal defendant can show bad faith on the part of the police. (*Ibid.*) Defendant has not argued or demonstrated bad faith in this investigation.

Defendant also complains that the prosecution violated the discovery rule of *Brady*, *supra*, 373 U.S. 83, because "[n]o evidence was ever entered as to the fact that pertains to the Criminal case, Such evidence/discovery will include all of the following; DNA, blood, urine, Finger prints, voice prints, walk, stride, and Chemical Analysis of any chemical used against any person or controlling factor used against any and/or all victim[s] in this case." *Brady* "does not stand for the proposition that a defendant has a federal constitutional right . . . generally to compel certain kinds of investigation." (*People v. Mena* (2012) 54 Cal.4th 146, 160.) In *People v. Cook* (2007) 40 Cal.4th 1334, a search of the defendant's home disclosed a discarded pair of tennis shoes in a trash bag with blood spatters consistent with one murder victim's blood, but not with the blood of another victim or the defendant. The defendant argued that the prosecution destroyed evidence, including the trash bag in which the tennis shoes were found, in violation of his due process right to view all evidence of an apparent material and exculpatory nature under *Arizona v. Youngblood* (1988) 488 U.S. 51, 58 and *California v. Trombetta*, *supra*, 467 U.S. 479, 488–489. (*People v. Cook, supra,* at p. 1348.) The Supreme Court rejected the argument as speculative because the defendant failed to show the trash bag actually contained possibly exculpatory evidence, or that the officers exercised bad faith in destroying it. (*Id.* at p. 1349.) Similarly, here defendant fails to show any of the items specified contained possibly exculpatory evidence or that the investigating officers acted in bad faith in failing to preserve those items, if any were present at the relevant crime scenes.

IV

Defendant claims prosecutorial misconduct based on a grant of immunity to witness Montgomery. He asserts that she was never charged with tampering or disposing of "serious mitigating evidence." As we understand the argument, defendant contends

7

his fundamental rights to due process and under the Sixth Amendment of the United States Constitution were violated because Montgomery was given immunity and allowed to testify despite possibly tampering with the bag given her by defendant and his accomplices by throwing it into a dumpster.

Montgomery was granted use immunity by the prosecution. Counsel for defendant's only objection was that Montgomery had not received the advice of independent counsel regarding the difference between use and transactional immunity. With that observation, he submitted. The court indicated that Montgomery would not likely be prosecuted because she had cooperated, and accepted the immunity agreement.

No objection was made on the grounds of prosecutorial misconduct. Failure to make a timely and specific objection, and to request that the jury be admonished, forfeits a claim of prosecutorial misconduct. (*People v. Clark* (2011) 52 Cal.4th 856, 960.) Defendant does not suggest that such an objection would be futile, excusing the failure to object. (*Ibid.*)

In any event, defendant's claim fails on the merits. "'A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it "infects the trial with such unfairness as to make the conviction a denial of due process." [Citations.] In other words, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." [Citations.]' [Citations.]" (*People v. Clark*, *supra*, 52 Cal.4th at p. 960.) Defendant has failed to demonstrate how a grant of immunity to Montgomery violated his right to fair trial. Granting Montgomery use immunity was neither deceptive nor reprehensible. Counsel for defendant had a full opportunity to examine Montgomery about her disposal of the bag. No prosecutorial misconduct is demonstrated.

8

## V

Defendant claims that his constitutional rights were violated because he was not advised that he was entitled to counsel at a live lineup or photographic lineup.

"[T]here is no Sixth Amendment right to counsel at a photographic lineup. (*United States v. Ash* (1973) 413 U.S. 300, 321.)" (*People v. Virgil* (2011) 51 Cal.4th 1210, 1250.) A criminal defendant does have a Sixth Amendment "right to have counsel present at a live lineup held after criminal proceedings have commenced. [Citations.] When a live lineup violates a defendant's Sixth Amendment rights, evidence of identifications made at the lineup is subject to a per se exclusionary rule [Citations.]" (*People v. Yokely* (2010) 183 Cal.App.4th 1264, 1271–1272.)

We have found no evidence in the record that defendant participated in a live lineup. There was no mention of a live lineup during Christina's testimony, either on direct or cross-examination. During opening statements, the prosecutor told the jury it would hear Detective David Yoshitake, one of the investigating officers, testify that Christina identified defendant from photographic six packs. At trial, Christina identified the photographic six pack from which she selected a photograph of defendant as one of her attackers. Detective Yoshitake was not asked about the photographic lineups during his testimony.

The only evidence of a lineup on this record was the photographic lineup shown to Christina. As noted, defendant did not have a right to counsel at that point. Defendant has not demonstrated that a live lineup was held, and thus has not established a deprivation of counsel.

## VI

Defendant argues the trial court committed prejudicial misconduct by allowing testimony regarding a bulletproof vest found in the vehicle used in the commission of these crimes. He argues that the trial court was required to weigh the probative value of this evidence against the risk of prejudice if admitted. He contends that this evidentiary error amounts to a denial of due process.

9

"The application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution. (*People v. Marks* (2003) 31 Cal.4th 197, 227.)" (*People v. Arauz* (2012) 210 Cal.App.4th 1394, 1403.) We review a ruling admitting evidence over an Evidence Code section 352 objection for abuse of discretion. (*People v. Pearson* (2013) 56 Cal.4th 393, 457.) A ruling under that statute ""will not be overturned on appeal in the absence of a clear abuse of . . . discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice." [Citation.]' (*People v. Lamb* (2006) 136 Cal.App.4th 575, 582.)" (*People v. Nguyen* (2013) 212 Cal.App.4th 1311, 1331–1332.)

On Friday, December 9, 2011, Whittier police officer Mark Goodman testified that he went to a tow yard and searched the vehicle used in the commission of these offenses. Among the items he recovered was a bullet-proof vest. There was no objection to this testimony. The following Monday, Chris Kraft, a forensic specialist for the Whittier Police Department, testified that he assisted the detectives with recovery of evidence from the vehicle at the tow yard. During his testimony about items found in the vehicle, counsel for codefendant Mendoza, joined by counsel for defendant, objected to the relevance of the bullet-proof vest. She argued there was no evidence that a gun was used, or about the identity of the person who owned the vest. She contended that the evidence was irrelevant and prejudicial.

The prosecutor argued that the evidence corroborated the testimony of Officer Goodman about extraction of various items from the vehicle. He contended this was necessary in part because no photograph was taken of the vest. The court said it agreed with defense counsel, and that if the question of admissibility had been presented in a motion to suppress under section 1538.5 before trial, the motion would have been granted. But the court stated that the officer's (Goodman's) testimony about the vest had been received without objection, and that Kraft's testimony corroborated it. The court concluded that evidence of the vest was probative for that reason.

It is likely that the issue regarding the vest was forfeited because no objection was raised when Officer Goodman testified about its recovery from the vehicle. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 994, fn. 7.) Assuming the issue was preserved, there was no reversible error. The bullet-proof vest was of limited probative value, particularly since Christina did not mention it in describing the attack upon her. Admission of that evidence, in the context of the overwhelming evidence of defendant's guilt, did not amount to a miscarriage of justice.

## VII

Defendant argues the prosecutor committed misconduct because he "knowingly entered prejudicial/prejudice evidence into discovery to be used against [him] at his criminal trial . . . ." He contends this amounted to a violation of his due process rights. But defendant fails to identify the evidence which is the basis for this claim. Under these circumstances, his claim cannot be resolved on the present record.

## VIII

Defendant argues his appointed appellate counsel was ineffective because she filed a brief pursuant to *Wende*, *supra*, 25 Cal.3d 436. He argues that the brief was a clear and direct violation of his due process rights. Under *Wende* and *People v. Kelly*, *supra*, 40 Cal.4th at p. 118, appellate counsel may file a brief seeking our independent review when no arguable issues are found. In *Wende*, the Supreme Court "recognize[d] that under this rule counsel may ultimately be able to secure a more complete review for his client when he cannot find any arguable issues than when he raises specific issues, for a review of the entire record is not necessarily required in the latter situation. [Citations.]" (*Wende*, *supra*, 25 Cal.3d at p. 442.) This procedure was approved by the United States Supreme Court in *Smith v. Robbins* (2000) 528 U.S. 259, 280–281, which recognized that this procedure provides two tiers of review to a criminal appellant.

A claim of ineffective assistance of counsel requires a defendant to establish "'(1) that counsel's representation fell below an objective standard of reasonableness;

11

*and* (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.] If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails.' [Citation.]" (*People v. Homick* (2012) 55 Cal.4th 816, 893, fn. 44.) Defendant failed to satisfy either prong of this test. Appellate counsel for defendant followed the approved *Wende* procedure. More importantly, we have reviewed each of the contentions raised by defendant which he claims should have been raised by his counsel and have found no basis for reversal.

Defendant also contends that counsel was ineffective in failing to present potentially mitigating evidence, but does not identify the nature of that evidence, which appears to concern matters outside the record on appeal. (See *People v. Black* (2009) 176 Cal.App.4th 145, 153.)


**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EPSTEIN, P. J.

We concur:



WILLHITE, J.



MANELLA, J.


12