Filed 10/16/24  P. v. Swogger CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082236 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FWV18002033) |
| CHARLES CALVIN SWOGGER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, John Nho Trong Nguyen, Judge.  Affirmed.

Benjamin Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Robin Urbansky and Namita Patel, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Charles Calvin Swogger of committing forcible lewd acts upon a child (Pen. Code,[1] § 288, subd. (b)(1); counts 1 and 2), aggravated

---

[1]    Undesignated statutory references are to the Penal Code.

sexual assault of a child (§ 269, subd. (a)(5); counts 3 and 4), sexual penetration by foreign object of a minor age 14 or older (§ 289, subd. (a)(1)(C); count 5), and forcible rape of a minor age 14 or older (§ 261, subd. (a)(2); count 6).  As to each count, it found true allegations that he had been convicted of committing a lewd act upon a child (§ 288, subd. (a)) within the meaning of the "Three Strikes" law (§§ 1170.12, subds (a)-(d); 667, subds. (b)-(i)), and he was a habitual offender (§ 667.71).

The court sentenced Swogger to an indeterminate term of 300 years to life: 25 years doubled to 50 years for each of the six counts.

Swogger contends:  (1) The court erroneously admitted into evidence the testimony of his stepdaughter under Evidence Code section 1108; (2) the prosecutor committed misconduct by disparaging defense counsel during closing arguments, and defense counsel provided ineffective assistance by failing to object to those arguments; (3) the court erroneously found that counts 5 and 6 were separate crimes for sentencing purposes and (4) it erroneously awarded him zero conduct credits.  The People concede and we agree that the last contention has merit.  Accordingly, we modify the judgment and as modified, affirm it.

FACTUAL AND PROCEDURAL BACKGROUND

Swogger was married to Jane Doe's mother, and started living with them in Fontana, California when Doe was approximately 10 or 11 years old.  As to counts one and two, Doe testified that Swogger grabbed and kissed her face and forcefully kissed her on the mouth on approximately ten occasions when they were alone.

As to counts 3 and 4, Doe testified that when her family moved to Rialto, California, she was under the age of 14.  There, Swogger digitally penetrated her vagina for approximately 10 minutes.  He repeated that

2

action on five to 10 separate occasions.  Swogger told her not to tell anyone about his actions.

As to counts 5 and 6, Doe testified that on one occasion, she was on the couch at home and wearing a T-shirt and underwear.  Swogger told her, "We're going to have some fun."  He sat down on the couch and reached towards her vagina.  She responded, "No."  He grabbed her wrist and forcefully held it down, took off her underpants and began to touch her vagina with his hand.  Afterwards, he let go of her wrist and proceeded to take off his pants.  She started crying and covering her eyes.  He moved her legs, and forcefully pushed her knees towards her chest.  He next rubbed his penis on the outside of her vagina, inserted it inside of her vagina, and roughly thrusted in and out for around ten minutes.  Afterwards, he put his clothes back on and left the room.

Over Swogger's objection, his other stepdaughter testified that he touched her inappropriately when she was approximately eight or nine years old.  As to that incident, Swogger pleaded no contest to committing a lewd and lascivious act on a child under section 288, subdivision (a).

## DISCUSSION

### I. *Propensity Evidence*

Swogger contends the court's admission of his other stepdaughter's testimony prejudicially violated his due process rights to a fair trial under the federal Constitution.  He argues that Evidence Code section 1108, which permits the trier of fact to consider evidence of uncharged sexual offenses as evidence of a defendant's disposition to commit such crimes, is unconstitutional.  He concedes the California Supreme Court has rejected such a due process challenge in *People v. Falsetta* (1999) 21 Cal.4th 903, 912, but raises the issue to preserve it for federal review.  In light of *Falsetta*, we

3

must reject this claim.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## II.  *Prosecutorial Misconduct Claims*

Swogger contends the prosecutor committed misconduct during her closing rebuttal arguments by improperly suggesting defense counsel was personally dishonest, therefore depriving him of his due process right to a fair trial.  He argues that even if we found he forfeited his prosecutorial error claim by failing to object, we should exercise our discretion to address the matter on the merits.  He alternatively contends his counsel provided ineffective assistance by failing to object.

### A.  *Background*

Swogger references three specific statements the prosecutor made during her rebuttal argument.  First, the prosecutor argued, "Let's talk about some of these things that defense counsel said and the way he said them and the way he said things in trial too.  Okay.  You all are tasked with deciding what the truth is.  You are the finders of fact.  It is up to you to consider when there were attempts by the defense to try to keep the truth from you.  Distortions of the truth, making you think that the truth isn't plainly what it is as it is stated in the record."

 Second, the prosecutor told the jury:  "You really should be questioning why the defense keeps trying to mislead you.  It's inviting you to speculate and you have a closed universe of evidence, ladies and gentlemen.  Of course the defense wants you to speculate about all sorts of things.  They want you to fall down the rabbit hole, to follow what we call the red herring, right?  Red herring being a red sort of bird that doesn't actually exist.  They want you caught up in all of those extraneous details that don't actually matter

4

because everything else presented in this case is a mountain of evidence against his client."

Finally, the prosecutor argued: "This is one of my favorite parts of the trial where the defense, again, cherry-picked the transcript, hiding the truth from you all, trying to make you believe that Jane Doe only testified that . . . the fingers in the vagina only happened one time. That's not the truth. When she was able to refresh her recollection as to the entire transcript on that particular issue, she clarified, well, it's one specific instance that I can recall the details; right. But she knows it happened more than one time. She said it happened more than one time at the prelim[inary hearing], and she said it in her testimony. And as I said, she is consistent on all of the major details and many of the small ones as well."

B. *Prosecutorial Misconduct—Legal Principles*

To preserve a claim of prosecutorial error, a "defendant must generally object 'in a timely fashion—and on the same ground,' and must 'request[ ] that the jury be admonished to disregard the impropriety.' " (*People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 29.) As Swogger did not object to any portion of the prosecutor's rebuttal argument and he did not request an admonishment, he has forfeited his claims of prosecutorial error.

While we do have the discretion to excuse forfeiture, such discretion is to be exercised sparingly. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Moreover, the forfeiture requirement serves an important purpose. Defendants must raise prosecutorial error claims during trial, where it can be remedied at once in a far more efficient and effective manner than on appeal. (See *People v. Peoples* (2016) 62 Cal.4th 718, 801 [reason for the forfeiture rule is that the trial court should be given the opportunity to correct the misconduct of counsel and thus, if possible, prevent the harmful effect on the

minds of the jurors].) We decline to exercise our discretion to excuse Swogger's failure to object because as we set forth below, even if he had objected, it is not reasonably probable he would have received a different result.

C. *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To demonstrate prejudice, a defendant must show a reasonable probability that the defendant would have achieved a more favorable result had counsel's performance not been deficient. (*Strickland, supra,* at pp. 693-694; *Ledesma, supra,* at pp. 217-218.)

The prosecution bears the burden of proving all elements of the crimes charged beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 364.) "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

A prosecutor has wide latitude during closing argument and may argue the case vigorously as long as the argument amounts to fair comment on the evidence and the reasonable inferences or deductions therefrom. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) A prosecutor may give his or her opinion on the state of the evidence, vigorously attack the defense case, and focus on the deficiencies in defense counsel's tactics and factual account.

6

(*People v. Redd* (2010) 48 Cal.4th 691, 735.) "A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel." (*People v. Hill* (1998) 17 Cal.4th 800, 832.)

"[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa, supra,* 15 Cal.4th at p. 841.) Appellate courts "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. (*People v. Dykes* (2009) 46 Cal.4th 731, 771-772.) An appellant "must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." (*Id.* at p. 771.)

Here, the challenged statements by the prosecutor, viewed in context, merely emphasized that the evidence of Swogger's guilt was overwhelming, and that jurors should rely on the truth as stated in the record, and not become distracted by defense counsel's irrelevant arguments that tended to obfuscate the truth. Moreover, the prosecutor cautioned the jury that defense counsel wanted it to "speculate about all sorts of things." The arguments were not improper. The California Supreme Court in *People v. Medina* (1995) 11 Cal.4th 694 stated it was unobjectionable for the prosecutor to state that " 'any experienced defense attorney can twist a little, poke a little, try to draw some speculation, try to get you to buy something.' " (*Id.* at p. 759.) Similarly, the court concluded a prosecutor's comments "concerning defense counsel's speculation '[did] not amount to a personal attack on counsel's integrity.' [Citations.] [Citation.] In addition, these comments focused the jury upon the evidence rather than distracting it from its task." (*People v. Redd, supra,* 48 Cal.4th at p. 735.) The same analysis applies here.

7

Additionally, the court instructed the jury on how to interpret the evidence and distinguish evidence from counsels' arguments: "You must decide what the facts are. It is up to all of you, and you alone to decide what happened, based only on the evidence that has been presented to you in this trial." The court further explained that " '[e]vidence' is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. [¶] Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence." The court further instructed the jury: "The court reporter has made a record of everything that was said during the trial. If you decide that it is necessary, you may ask that the court reporter's record be read to you. You must accept the court reporter's record as accurate." We presume a jury understands and follows the court's instructions, and treats the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205.)

Swogger relies on *People v. Seumanu* (2015) 61 Cal.4th 1293, in which the California Supreme Court concluded: "The prosecutor thus committed misconduct in closing argument in two ways: she implied defense counsel knew his client was guilty, and that counsel 'put forward' a sham defense, i.e., one he knew was false. Because defendant did not interpose timely and specific objections to the improper argument, the errors were not preserved for appeal. But even had the claims been preserved, reversal would not be required because these two instances of improper argument, considered together, could not have prejudiced defendant. As noted earlier, there was strong evidence of defendant's guilt[.]" (*Id.* at p. 1338.) We conclude that

8

Swogger's reliance on this case is misplaced, as the challenged statements here were not as egregious or disparaging of defense counsel as those in *Seumanu*. Moreover, even if defense counsel had preserved his claims for appeal, the prosecutor's arguments would not have required reversal in light of the substantial evidence that Doe provided supporting each conviction. "A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. . . . Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal. 4th 1038, 1052.)

### III. *Counts 5 and 6*

Swogger contends no substantial evidence supports the court's finding that, under section 667.6 subdivision (d), he committed the count 5 and 6 crimes on separate occasions for sentencing purposes.

### A. *Background*

At sentencing, the prosecutor argued the court should sentence Swogger consecutively on the count 5 digital penetration conviction and the count 6 forcible rape conviction because each incident was separate. She explained that Swogger first digitally penetrated Doe's vagina. After he did that, he removed his pants, removed his belt, and pushed Doe's legs up towards her shoulder as she covered her face with her arms and cried. After that, Swogger inserted his penis in her vagina and forcibly raped her. The prosecutor asserted that Swogger could not accomplish the two crimes at the exact same time, and he had sufficient time following the digital penetration to reflect before he engaged in the forcible rape.

9

Defense counsel argued there was only one continuous incident that occurred on the same occasion, pointing out Swogger did not leave the room and return in between the acts. He therefore argued for concurrent sentences.

The trial court ruled that each act was separate: "The first act was digital penetration, but the second followed by a breakdown in time for him to do the things that he did in terms of raising the legs and whatnot." Relying on *People v. Jimenez* (2002) 99 Cal.App.4th 450 and *People v. Harrison* (1989) 48 Cal.3d 321, it sentenced Swogger consecutively on the two crimes. It ruled this sentence also was appropriate under California Rules of Court, rule 4.425: "The crimes and the objective were predominantly independent and distinct of each other." It separately found that California Rules of Court, rule 4.426 required it to impose a full consecutive term in each violent sex offense committed on separate occasions.

B. *Legal Principles and Analysis*

Section 667.61 mandates consecutive sentences for each conviction of forcible lewd conduct upon a child under section 288, subdivision (b) if the offenses "involve[d] the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (§ 667.61, subds. (c)(4), (i); *People v. Lopez* (2022) 76 Cal.App.5th 287, 291.) Section 667.6 subdivision (d)(2) provides that the court shall consider whether "the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed." The standard is broad and does not require an obvious break in the defendant's behavior or control over the victim. (*People v. Jones* (2001) 25 Cal.4th 98, 104.) "Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the

10

defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

Applying this deferential standard, we conclude the trial court could reasonably decide to sentence Swogger separately on count 5 (digital penetration of Doe's vagina) and count 6 (forcible rape), based on its conclusion Swogger had sufficient time and opportunity to reflect on his conduct between acts but opted to continue with the rape, notwithstanding Doe's cries. The evidence set forth above supports this conclusion, as in between the digital penetration crime and the rape crime, Swogger unbuckled his pants, removed them, and repositioned Doe's body to accomplish his rape.

## IV. *Conduct Credits*

Swogger contends, the People concede, and we agree the trial court erred by awarding him zero conduct credits.

### A. *Background*

At sentencing, the court considered the probation report, which recommended Swogger receive credit for 1647 actual days in custody and 247 conduct credits under section 2933.1. Nevertheless, the court awarded him 1,671 actual days in custody for time spent in pretrial custody and "zero credit for good time, work time."

### B. *Analysis*

It is the duty of the sentencing court to calculate the presentence actual credit and presentence conduct credit to which a defendant is entitled, and to record the total credits allowed on the abstract of judgment. (§ 2900.5, subd. (d); *People v. Black* (2009) 176 Cal.App.4th 145, 154; see also Cal. Rules of Court, rules 4.310, 4.472.) The failure to properly award custody and conduct

11

credit is an unauthorized sentence that may be corrected on appeal. (See *People v. Cardenas* (2015) 239 Cal.App.4th 220, 235; *People v. Acosta* (1996) 48 Cal.App.4th 411, 428, fn. 8. ["failure to award adequate amount of credits is a jurisdictional error which may be raised at any time"]; *People v. Guillen* (1994) 25 Cal.App.4th 756, 764 [computational errors concerning presentence credits "result in an unauthorized sentence" and are subject to correction by the appellate court].)

Under section 2933.1, a person who is convicted of a felony offense listed in section 667.5, subdivision (c) "shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."

"Awarding conduct credits under section 2933.1 is not a discretionary matter. " (*People v. Goldman* (2014) 225 Cal.App.4th 950, 961.) Since Swogger's convictions were for violent felonies and he did not waive his presentence custody credit, he is entitled to 15 percent conduct credit or 250.65 days. We round that number down to 250 and award conduct credits. (*People v. Ramos* (1996) 50 Cal.App.4th 810, 815-816 [trial court may not round conduct credits up].) The court erred by awarding him zero credit for good time.

DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for the court to prepare an updated abstract of judgment awarding Charles Calvin Swogger conduct credits consistent with this opinion, and forward a certified copy of it to the Department of Corrections and Rehabilitation.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.