Filed 10/30/25  P. v. Diaz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C101452 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CF02908) |
| v. | |
| BARAK SKYLAR DIAZ, | |
| Defendant and Appellant. | |

Defendant Barak Skylar Diaz pleaded guilty to misdemeanor battery and infliction of corporal injury on the mother of his child.  In January 2023, the trial court suspended imposition of his sentence and placed defendant on formal probation for three years.  In October 2023, defendant admitted to a violation of probation after he was terminated from his batterer's treatment program.  The trial court revoked and subsequently reinstated and continued probation.  In April 2024, defendant admitted to a second violation of probation, for being terminated from his residential substance abuse treatment program.  The trial court revoked probation, denied defendant's request for continuation, and sentenced him to the middle term of three years for the infliction of corporal injury count and a concurrent six-month term for misdemeanor battery.

1

On appeal, defendant argues (1) the trial court abused its discretion in terminating his probation based on a "de minimis" violation without providing him with a meaningful opportunity to succeed, (2) the trial court violated his constitutional rights by terminating probation based on his failure to establish a payment plan for his fines and fees, (3) the cumulative effect of these errors warrants reversal, and (4) the sentence imposed is unauthorized because the trial court improperly considered his current performance on probation as an aggravating circumstance. We will affirm.

BACKGROUND

*Factual Background*

On April 29, 2022, at 4:06 a.m., sheriff's deputies responded to a report of domestic violence at a residence in Oroville. T.W.[1] had been in a dating relationship with defendant for approximately eight years, and they had three children together, B.D. (three years old), C.D. (two years old), and A.D. (two months old). According to T.W., defendant came home intoxicated at 4:00 a.m. T.W. and the children were sleeping in the living room. Defendant inadvertently sat on top of C.D., who had been asleep on the couch. T.W. yelled at defendant and attempted to pull him off C.D. Defendant yelled at T.W., who then gathered the children to bring them to a bedroom. Defendant followed, struggled with T.W. over B.D., and fell to the floor while holding B.D. Defendant then carried B.D. out of the room and fell on top of B.D. T.W. pulled defendant off B.D., and defendant threw T.W. to the floor, got on top of her, and struck her twice in the face with an open hand. Defendant then choked T.W. to the point where she had difficulty breathing. He grabbed her wrists and continued to yell at her. K.G., who was also at the residence, pulled defendant off T.W., and defendant struck K.G.

---

[1] To protect their privacy, we will refer to the victim, children, and witness by their initials. (Cal. Rules of Court, rule 8.90(a)(1), (b)(1), (4) & (10).)

2

After defendant was placed in a patrol vehicle, he threatened to kill the deputies. As a deputy drove defendant to the county jail, defendant stated that he was going to kill the deputy, his wife, and his children. A breath test established that defendant had a blood alcohol content of 0.14 percent.

*Charges and Plea*

A complaint deemed information charged defendant with infliction of corporal injury on the mother of his child (Pen. Code, § 273.5, subd. (a); count 1);[2] misdemeanor child abuse likely to produce great bodily harm (§ 273a, subd. (b); count 2); resisting an executive officer (§ 69, subd. (a); count 3); misdemeanor battery (§ 242; count 4); and misdemeanor vandalism (§ 594, subd. (a); count 5).

On December 28, 2022, defendant pleaded guilty to counts 1 and 4, and the trial court dismissed the remaining counts. On January 25, 2023, the trial court suspended imposition of his sentence and placed defendant on formal probation for three years with conditions. The conditions included that defendant would serve 120 days in county jail, complete 80 hours of community service, enroll in a batterer's treatment program, attend a 12-step program three days per week, and pay a $300 restitution fine (§ 1202.4, subd. (b)), $80 as a court operations assessment (§ 1465.8), and $60 as a criminal conviction assessment (Gov. Code, § 70373).

*First Violation Petition*

On September 20, 2023, the People filed a violation of probation petition, alleging that, on or about September 18, 2023, defendant was terminated from his 52-week batterer's treatment program in violation of special condition 9. On October 5, 2023, defendant admitted to the violation, and the trial court revoked probation. On December 14, 2023, the court reinstated and continued probation with modified terms, including

---

[2]     Undesignated section references are to the Penal Code.

3

180 days in county jail with discretion that defendant may be released into a licensed residential substance abuse treatment program, reenrollment in the 52-week batterer's treatment program, and participation in the Workforce Alliance program.

*Second Violation Petition*

On April 4, 2024, the People filed a second violation of probation petition, alleging that, on or about March 27, 2024, defendant was terminated from the residential substance abuse treatment program without permission of the court or his probation officer in violation of general condition 1 and special condition 20. On April 18, 2024, defendant admitted to the violation, and the trial court again revoked probation.

*Sentencing*

Defendant requested reinstatement of probation. Counsel stated that defendant understood the seriousness of his violation and took full responsibility for his actions. However, counsel emphasized that defendant had remained out of custody since his most recent violation, he was working, he had been attending Alcoholics Anonymous, he had been helping support his children, and he was seeing a therapist. Counsel represented that defendant was willing to reenter a residential substance abuse treatment program, and stated that he believed defendant was eligible to reenter the previous residential treatment program. In the alternative, if the court denied reinstatement to probation, counsel requested a lower-term sentence.

The trial court stated that it had considered the original probation report dated January 17, 2023, the supplemental probation report dated June 3, 2024, and a letter documenting defendant's employment. The court denied defendant's application for continuation on probation because defendant had been unsuccessful in his efforts on probation. The court stated that past performance is the best predictor of future success. The court continued: "[T]his is the defendant's second sustained violation of probation petition. He has failed to complete his community service hours. He has been terminated from the 52-week batterer's treatment program and the residential substance abuse

treatment program, and he has not established a payment plan for his fines and fees." (Some capitalization omitted.)

Turning to the sentence to be imposed, the trial court stated: "[T]he court finds on balance that the circumstances [in] aggravation do not outweigh the circumstances [in] mitigation, and, therefore, the court will impose the middle term. [¶] Specifically, the court notes the following reasons for its choice of term: [I]n aggravation, the defendant's performance on probation has been unsatisfactory. In mitigation, the defendant has an insignificant record of prior criminal conduct." (Some capitalization omitted.) The court revoked and terminated probation as unsuccessful and sentenced defendant to the middle term of three years in state prison for the infliction of corporal injury and six months concurrent for misdemeanor battery.

DISCUSSION

I

*Termination of Probation*

Defendant argues the trial court abused its discretion in terminating his probation based on his admitted violation, which he characterizes as "de minimis," without affording him a meaningful opportunity to succeed on probation. (Italics omitted.) According to defendant, terminating probation and imposing a sentence was grossly disproportionate to his violation. We find no abuse of discretion.

" '[S]ection 1203.2 provides the court may revoke probation if it has reason to believe that the person has violated any of the probation conditions.' " (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.) "[A] decision to revoke probation when the defendant fails to comply with its terms rests within the broad discretion of the trial court." (*People v. Covington* (2000) 82 Cal.App.4th 1263, 1267.) "We review the trial court's probation revocation order for an abuse of discretion." (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) Although the discretion to revoke probation "is very broad,

5

the court may not act arbitrarily or capriciously; its determination must be based upon the facts before it." (*People v. Buford* (1974) 42 Cal.App.3d 975, 985.)

Defendant argues that the trial court failed to account for the insignificant nature of his violation. He emphasizes that the residential substance abuse treatment program determined he was an appropriate candidate for readmission, suggesting that it did not deem his violation severe. Defendant also emphasizes that his violation was not illegal, threatening, or dangerous.

Defendant relies on the supplemental probation report as establishing the facts underlying his violation. The report stated that defendant "asked to have a staff member make a telephone call on his behalf because he 'needed more cigarettes and was missing home.' The staff member approved the defendant's sponsor to make the call for him. A few days later, the defendant was informed he was terminated from the program for violating the blackout rule."

The People counter that the facts of defendant's violation are unknown because defendant admitted his violation. Therefore, there was no evidentiary hearing at which the facts of defendant's violation would have been established.

Defendant admitted his violation, but there was no discussion by defendant or the trial court of the underlying factual circumstances beyond acknowledging that defendant had been terminated from his program. For present purposes, we will assume the accuracy of the facts underlying defendant's violation as stated in the supplemental report. (Cf. *People v. Smith* (1970) 12 Cal.App.3d 621, 626-627 ["[w]here revocation is based solely on the probation officer's report and absent other competent evidence, the facts before the court are those alleged in the report"].)

Defendant's violation, as summarized in the supplemental probation report, consisted of being terminated from his treatment program after he asked a staff member to call someone "because he 'needed more cigarettes and was missing home.' " This was a violation of the program's "blackout" rule. The report specified that defendant was

6

aware of the rule. Thus, defendant knowingly and willfully violated a condition of his probation. We do not agree with defendant that a willful violation of the rules of a court-ordered substance abuse treatment program, resulting in termination from that program, is a "de minimis" violation. (Italics omitted.) Additionally, the fact that defendant did not place a call violating the blackout rule himself, but persuaded someone else to do so, does not diminish the violation or his culpability. In fact, the supplemental probation report states that defendant "recognizes he manipulates situations to his advantage."

Defendant relies on *People v. Zaring* (1992) 8 Cal.App.4th 362 (*Zaring*) as an example of the application of the abuse of discretion standard in this context, taking proportionality into account. In that case, the defendant arrived 22 minutes late for a court appearance, and the trial court summarily revoked probation. (*Id*. at p. 366.) The court terminated probation and sentenced the defendant to state prison. (*Id*. at p. 367.) The Court of Appeal concluded that the defendant did not commit a willful violation and that the trial court abused its discretion in finding a violation. (*Id*. at p. 375.) The appellate court concluded: "[the defendant] was confronted with a last minute unforeseen circumstance as well as a parental responsibility common to virtually every family. Nothing in the record supports the conclusion that her conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court. However, as a result of last minute circumstances, the appellant was approximately 22 minutes late to court, having driven some 35 miles from her home to the courtroom. Collectively, we cannot in good conscience find the evidence supports the conclusion that the conduct . . . constituted a willful violation . . . . [The trial court judge's] action in revoking . . . probation under the circumstances presented . . . [was] an arbitrary and capricious use of the court's power and constituted an abuse of discretion." (*Id*. at p. 379, fns. omitted.)

As defendant notes, the violation in *Zaring* was minor, and the revocation of probation could be deemed disproportionate to the violation. But the pivotal issue in

*Zaring* was the fact that the defendant's violation was not willful. (*Zaring, supra,* 8 Cal.App.4th at p. 379.) Here, in contrast, defendant's violation was willful because he knew of the blackout rule and chose to violate it. He concedes as much on appeal. Defendant has not persuaded us that, consistent with *Zaring*, the trial court's revocation decision was disproportional to his violation such that it constituted an abuse of discretion.

"[T]he inquiry of the court when considering probation revocation is not directed solely to the probationer's guilt or innocence, but to the probationer's performance on probation. Thus the focus is (1) did the probationer violate the conditions of his probation and, if so, (2) what does such an action portend for future conduct?" (*People v. Beaudrie* (1983) 147 Cal.App.3d 686, 691.) There is no question that defendant violated the conditions of his probation. He admitted doing so.

Relevant to what defendant's actions portended for the future, the trial court expressly stated that it believed past performance was the best predictor of future success. This was defendant's second termination from a court-ordered program that was a condition of his probation. After the first violation, the trial court revoked, then reinstated, and continued probation.

We conclude that, given defendant's unsatisfactory performance on probation, consisting of two violations over 14 months, each involving defendant's termination from a court-ordered program that was a condition of his probation, the trial court did not abuse its discretion in revoking probation.

Defendant also argues that the trial court's determination denied him the opportunity to succeed on probation due to "structural barriers created by the court's own previous custody orders" and the "fragmented and intermittent nature of his supervision periods." In this regard, he emphasizes that, during certain periods of his probation, his "probation experience was defined by repeated cycles of confinement/restraint, and/or blackout residential treatment, with brief periods of community release."

8

Probation is a privilege, not a right. (*People v. Olguin* (2008) 45 Cal.4th 375, 384.) In accepting the privilege, defendant voluntarily accepted and agreed to the conditions of his probation even if, as he now argues, those conditions were "extremely difficult to fulfill" based on the trial court's orders. Defendant has not demonstrated that the trial court abused its discretion in holding him responsible for his violations.

Defendant has admitted to his probation violations. In the earlier violations, defendant's absences from a batterer's treatment program were unexcused, and he was eventually terminated from the program for failure to attend. In the more recent violation, he admitted to knowing about the blackout rule and willfully violating it. Unlike *Zaring*, he does not argue that this violation resulted from circumstances beyond his control. (See *Zaring, supra*, 8 Cal.App.4th at p. 379; *id*. at p. 376.) "[T]here is no abuse of discretion in revocation where it appears from the record that the accused has violated the terms and conditions of probation." (*People v. Nelson* (1967) 257 Cal.App.2d 282, 285-286.) The trial court did not abuse its discretion in revoking probation.

## II

### *Failure to Establish a Payment Plan*

Defendant argues that the trial court violated his equal protection and due process rights by terminating probation based, in part, on his alleged failure to establish a payment plan. According to defendant, the record indicates that the court's finding was in reality based on his outstanding $215 balance, which was due to indigency. He argues that a defendant cannot be deprived of his or her freedom based on indigency resulting in an inability to satisfy court-ordered financial obligations, and that, here, there was no ability-to-pay determination.

The People argue that defendant forfeited his contention by failing to raise it in the trial court. Rather than undertaking a forfeiture analysis, we conclude the most expeditious course is to exercise our discretion, to the extent necessary, to address the

9

issue on the merits. (See *De La Cruz v. Mission Hills Shopping Center LLC et al.* (2025) 110 Cal.App.5th 1086, 1088 [appellate courts have discretion to consider forfeited claims]; *People v. Whitmore* (2022) 80 Cal.App.5th 116, 131, fn. 7 [we have discretion to consider forfeited arguments if there is good cause to do so].)

At sentencing, the trial court stated: "[T]his is the defendant's second sustained violation of probation petition. He has failed to complete his community service hours. He has been terminated from the 52-week batterer's treatment program and the residential substance abuse treatment program, *and he has not established a payment plan for his fines and fees.*" (Some capitalization omitted, italics added.)

The People correctly observe that defendant did not admit that he failed to establish a payment plan, and any failure to do so was not established by admissible evidence. In the absence of competent evidence, the People concede that the trial court erred to the extent that it found defendant failed to establish a payment plan and recited that among the ways in which defendant's performance on probation had been unsatisfactory. We agree with the People, however, that the error was harmless beyond a reasonable doubt.

The second violation petition alleged defendant was terminated from the residential substance abuse treatment program. While the supplemental probation report stated that defendant had a $215 outstanding balance in fines and fees and that he had not established a payment plan, this was not alleged as a probation violation, and the report postdated defendant's admission that he violated probation. Because defendant lacked notice and the opportunity to be heard on his alleged failure to establish a payment plan as a violation of his probation, the error was one of constitutional dimension. (See generally *Morrissey v. Brewer* (1972) 408 U.S. 471, 488-489 [discussing minimum due process requirements at a parole revocation hearing, including notice of the claimed violation, disclosure of the evidence, and the opportunity to be heard].) We therefore

10

must reverse unless we conclude that the error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.)

We note that while defendant argues the error was not harmless beyond a reasonable doubt, he alternatively characterizes the issue as one involving an unauthorized sentence and cites the rule that unauthorized sentences are not amenable to harmless error analysis. (See, e.g., *People v. Cabrera* (2018) 21 Cal.App.5th 470, 478.) "[A]n unauthorized sentence or one in excess of jurisdiction is a sentence that 'could not lawfully be imposed under any circumstance in the particular case.' " (*In re G.C.* (2020) 8 Cal.5th 1119, 1130.) Unlike an unauthorized sentence, the issue here does not involve a sentence that could not lawfully be imposed under any circumstances or an error that " 'present[s] "pure questions of law" [citation], and [is] " 'clear and correctable' independent of any factual issues presented by the record at sentencing" ' and without 'remanding for further findings.' " (*Ibid.*) We thus turn to harmless error and an analysis of prejudice under *Chapman*.

Defendant frames the issue this way: because there was no evidence of his failure to establish a payment plan, the trial court's finding must have been based on his outstanding balance (and attributable to his indigency), and the court did not perform an ability to pay determination. Based on this characterization of the issue, in his prejudice analysis, defendant focuses on his financial circumstances and how they "created interconnected barriers to successfully completing multiple probation requirements." He argues this error "affected the court's entire evaluation of [his] probation performance."

In our view, the correct inquiry is whether the trial court's inclusion of defendant's purported failure to establish a payment plan, among its observations concerning defendant's probation shortcomings, was harmless beyond a reasonable doubt. In contrast to defendant's framing of the issue, we read the trial court's observation literally, i.e., among other things, defendant had not established a payment plan, and we consider

11

whether, in the absence of evidence to support this observation, the trial court's citation of that fact was harmless beyond a reasonable doubt.

As discussed above, defendant's probation was first revoked, but reinstated and continued in September 2023, after defendant admitted to the violation as alleged. Then, in April 2024, defendant admitted to a second probation violation, the one at issue here—violations of general condition 1 and special condition 20.

The trial court stated that it was denying defendant's application for continuation on probation "for the following reasons: [T]he defendant has been tried on probation in this matter and he has failed. The court is aware, based on its own experience, that the best predictor on how someone will do in the future is looking at how they've done in the past." (Some capitalization omitted.) The court then "note[d]" that "this is the defendant's second sustained violation of probation petition. He has failed to complete his community service hours. He has been terminated from the 52-week batterer's treatment program and the residential substance abuse treatment program, and he has not established a payment plan for his fines and fees." (Some capitalization omitted.) The court then revoked and terminated probation as unsuccessful and imposed sentence.

The trial court decided to revoke probation and impose a prison term based on defendant's two admitted violations of probation, each for being terminated from a court-ordered program for rule violations. As the parties agree, defendant's failure to establish a payment plan was never alleged as a probation violation. The trial court stated that the "basis of the violation of probation is being terminated from [the] residential treatment program without permission of the court or probation." (Capitalization omitted.) Defendant admitted that violation. The court merely "note[d]" defendant's purported failure to establish a payment plan.

Because the trial court based its revocation and sentencing decision on defendant's termination from the residential substance abuse treatment program, any error in reciting defendant's supposed failure to establish a payment plan was harmless beyond a

12

reasonable doubt. Based on the foregoing, we conclude, beyond a reasonable doubt, that the error did not contribute to the trial court's revocation determination. (See *Chapman v. California, supra*, 386 U.S. at p. 24.)

### III

### *Cumulative Error*

Defendant argues that the cumulative effect of the foregoing errors violated his due process rights and warrants reversal. We found defendant's first claim of error lacking in merit. Thus, there is no error to aggregate with the error related to the trial court's consideration of defendant's failure to establish a payment plan. We therefore reject defendant's cumulative error claim. (See *People v. Vieira* (2005) 35 Cal.4th 264, 305; see also *People v. Richie* (1994) 28 Cal.App.4th 1347, 1364.)

### IV

### *Unauthorized Sentence*

Defendant argues that the sentence imposed is unauthorized because the trial court violated California Rules of Court, rule[3] 4.435(b)(1), by considering his current performance on probation as a circumstance in aggravation. Defendant further asserts that, if he forfeited this contention, it was a result of ineffective assistance of counsel. The People argue forfeiture. We again exercise our discretion, to the extent necessary, to address the issue on the merits as the most expeditious course. (See *De La Cruz v. Mission Hills Shopping Center LLC et al., supra*, 110 Cal.App.5th at p. 1088; *People v. Whitmore, supra*, 80 Cal.App.5th at p. 131, fn. 7.) We conclude the trial court did not impose an unauthorized sentence.

Under rule 4.435, the length of a sentence imposed on revocation and termination of supervision under section 1203.2 "must be based on circumstances existing at the time

---

[3] Undesignated rule references are to the California Rules of Court.

supervision was granted, and subsequent events may not be considered in selecting the base term . . . ." (Rule 4.435(b)(1).)

The People rely on *People v. Harris* (1990) 226 Cal.App.3d 141. In *Harris*, as in this case, the defendant was placed on probation, violated probation, and the trial court revoked and then reinstated probation. (*Id*. at p. 143.) When the defendant again violated probation, the trial court sentenced him to a state prison term. (*Id*. at p. 144.) The defendant argued that "the court was constrained by [former] rule 435(b)(1)," predecessor to rule 4.435(b)(1), "to consider only those circumstances existing at the time of the original grant of probation . . . ." (*Harris,* at p. 144.) The Court of Appeal concluded that former rule 435 "allows consideration of circumstances preceding a *reinstatement* of probation. The rule bars considering events subsequent to 'the time probation was granted . . . .' . . . However, reinstating probation on modified terms appears to be a new *grant* of probation within the meaning of the rules." (*Harris,* at p. 145.) The court continued: "We hold that when a court reinstates probation under the circumstances present here, a later sentence upon revocation of the reinstated probation may take into account events occurring between the original grant and the reinstatement." (*Id*. at p. 147.)

Here, following the filing of the first violation petition, defendant admitted the violation, and the trial court revoked probation. The court later reinstated and continued probation with modified terms. After defendant's second violation, the court again revoked probation. Under *Harris*, it would not have been an error for the trial court to consider as a circumstance in aggravation defendant's first violation of probation, which occurred "between the original grant and the reinstatement" of probation. (*People v. Harris, supra*, 226 Cal.App.3d at p. 147.)

In imposing the middle term, the trial court stated: "[T]he court finds on balance that the circumstances [in] aggravation do not outweigh the circumstances [in] mitigation, and, therefore, the court will impose the middle term. [¶] Specifically, the court notes

14

the following reasons for its choice of term:  in aggravation, the defendant's performance on probation has been unsatisfactory.  In mitigation, the defendant has an insignificant record of prior criminal conduct."  (Some capitalization omitted.)

The People acknowledge that the trial court's remarks did not expressly limit its consideration of defendant's performance on probation to the period between the original grant of probation and its first revocation and reinstatement.  However, as the People note, absent evidence to the contrary, an appellate court presumes "that the trial court knew the law and followed it."  (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)  In the absence of evidence to the contrary, we presume that, in articulating this circumstance in aggravation, the trial court was referring to defendant's first violation for being terminated from his batterer's treatment program, after the original grant and prior to revocation and reinstatement.

Defendant argues that the record does not affirmatively demonstrate that the trial court so limited its consideration.  However, this argument ignores the operation of the presumption.  We do not make a presumption based on a matter being affirmatively established by the court's remarks.  We instead presume, in the absence of evidence *to the contrary*, that the trial court knew and followed the law.  (*People v. Ramirez, supra*, 10 Cal.5th at p. 1042.)

Defendant quotes the trial court's statement that "defendant's performance on probation *has been* unsatisfactory," and simply assumes that this "statement encompasses performance throughout the entire probationary period."  (Italics added.)  This is not proof to establish that the trial court did not know or follow the law.  Defendant thus has not established that the court imposed an unauthorized sentence.

15

DISPOSITION

The judgment is affirmed.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Earl, P. J.

_____\s\_____,
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.